CECILE RENAULT *vs.* JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY.

MAY 21, 1964.

PRESENT: Condon, C. J., Roberts, Powers and Joslin, JJ.

Powers, J. This action in assumpsit was brought to collect additional death benefits claimed under the provisions of three policies of insurance on the life of the plaintiff's husband, who died shortly after sustaining personal injuries in a collision between an automobile and a motor bike operated by him. The case was tried to a superior court justice, sitting with a jury, which returned a verdict for the plaintiff. The trial justice thereupon granted the defendant's motion for a directed verdict, on which motion he had reserved decision in accordance with rule No. 46 of the superior court. The case is before us on the plaintiff's bill of exceptions to three evidentiary rulings and to the granting of the defendant's motion for a directed verdict.

It is established by the record that during a period commencing in December 1940 through July 26, 1944, Leo Renault purchased three separate policies of life insurance from defendant in each of which the widow plaintiff is beneficiary. It is undisputed that each policy contained a provision for

double indemnity, the exact terms of two of which are as follows:

"Upon receipt at its Home Office of due proof on the Company's prescribed forms, that the Insured, after the date of issue of this policy and after the attainment of age 15 and prior to the attainment of age 70 and while there was no default in the payment of a premium beyond the Period of Grace, sustained bodily injury solely through external, violent and accidental means, that such injury was evidenced, except in the case of drowning or of an internal injury revealed by an autopsy, by a visible contusion or wound on the exterior of the Insured's body, and that the death of the Insured resulted therefrom, directly and independently of all other causes, within ninety days from the date thereof and while there was no such default in the payment of a premium, the Company will pay, in addition to any other sums due under this policy and subject to its provisions, an amount equal to the amount of insurance otherwise payable hereunder, except as provided below:

"* * * (2) No Additional Death Benefit will be paid if the death of the Insured resulted directly or indirectly, or wholly or partially, from disease, or from bodily or mental infirmity, or from suicide, while sane or insane, or from the inhaling of any kind of gas, whether voluntary or otherwise, or from having been engaged in submarine or diving operations, or in aviation except as a fare-paying passenger, or from a state of war or insurrection, or from participation in a riot, or from military or naval service in time of war. * * *"

The third policy is substantially similar.

It is admitted that defendant paid the face amount of the three policies totaling $968, and the instant action was brought to recover a similar amount on the strength of the foregoing provisions and the circumstances surrounding the death of the insured.

The record further establishes that on May 13, 1955 the insured while operating a motor bike collided with an auto-

mobile at the intersection of Mendon road and Bartlett street in the city of Woonsocket, and was taken to a hospital where he died on May 18, 1955. Because of the accident an autopsy was performed by the then chief medical examiner, Dr. Arthur E. O'Dea. His post-mortem report, placed in evidence by plaintiff, concluded, "And I further declare it to be my opinion that the said Leo Renault came to his death as the result of bilateral hydronephrosis aggravated by blunt injury to the flanks and abdomen. Accidental."

Doctor O'Dea explained that the word "accidental" referred to the manner in which the injuries were sustained rather than to the cause of death. Called by plaintiff, he testified that there were several abrasions and contusions on the body of the insured, notably about the left eye and forehead; a brown discoloration on the right side of the abdomen, five by four inches; similar discoloration, fourteen by seven inches, along the left side of the abdomen, groin and thigh; and bruises or scrape marks on the left knee and back of both hands. He also found approximately a quart and a half of blood in the back part of the abdomen. This, he testified, resulted from a hemorrhage of the left ureter, or large tube running from the kidneys to the bladder.

It was also the doctor's testimony that the autopsy disclosed a kidney condition which established that the deceased had been suffering for several years from a disease known as hydronephrosis. He defined this is an enlargement of the pelvis from the kidneys due to some obstruction which prevents a normal outflow of urine.

Asked by plaintiff whether he had an opinion if death would have occurred on the date in question by reason of the injuries apart from the kidney condition, the doctor replied, "Well, I can't say that because he had both injury and his disease, his kidney disease. He died as a result of

both of them. In other words it would be just crystal gazing to say anything else in regard to this matter."

When substantially the same question was repeated later, defendant's objection was sustained and is the subject of plaintiff's first exception.

She testified that she and the insured had been married for twelve years during which time he had neither complained of nor suffered any illness, and in rebuttal of defendant's medical evidence she denied that her husband consumed excessive quantities of water prior to the accident, or that he was in the habit of urinating four or five times a night. She further denied that he complained either of headaches or of pains in his stomach.

This testimony was offered after Dr. Alfred E. King, called by defendant, had testified of having been otherwise informed by the deceased insured. It appears that Dr. King attended Leo Renault at the Woonsocket Hospital when he was admitted on May 13, following the accident. He testified that although the patient's condition was not believed to be serious at the time of his admission, his stomach became distended about the third day; that his condition deteriorated steadily thereafter; and that he suspected the insured was suffering from a serious kidney problem and questioned him about previous illnesses or hospitalization. He learned that the insured had been hospitalized during his army service some twelve years prior but did not know the cause, and that he was in the habit of consuming several gallons of water daily and urinating five to eight times nightly.

It appears that the death certificate, introduced by plaintiff, was prepared from information furnished by Dr. O'Dea. The cause of death is stated thereon as follows: "Severe bilateral hydronephrosis (yrs) aggrivated [sic] by blunt injury to the flanks and abdomen (days). Autopsy. Accident."

On cross-examination Dr. King was asked if he had treated Leo Renault for a kidney condition prior to the accident and he answered in the negative. The plaintiff thereupon attempted to impeach the doctor's credibility by directing questions based on statements contained in an affidavit filed by counsel for defendant in connection with a motion for a continuance at the time the case had been assigned for trial some four years earlier. The trial justice sustained defendant's objection and plaintiff excepted.

The plaintiff then made an offer of proof based on the contradiction between Dr. King's present testimony that he had never treated the insured for any kidney disease prior to the accident date and the aforementioned affidavit wherein statements were made by defendant to the effect that, if present as a witness, Dr. King would testify he had treated the decedent over a period of twelve years previous to his death for a condition known as hydronephrosis. The rulings of the trial justice in denying plaintiff recourse to the affidavit for the purpose of impeaching the doctor constitute the bases for plaintiff's second and third exceptions.

After the parties had rested, defendant moved for a directed verdict and the trial justice reserved decision in accordance with rule No. 46 of the superior court. He then instructed the jury and, at defendant's request, directed them to make special findings of fact on the following questions: "Was the death of Leo Renault caused solely and exclusively by the accident? * * * Was the death of Leo Renault, due in part, however slight, to the diseased condition of the kidney?"

The jury returned a verdict for plaintiff on all three policies in the total sum of $968 plus interest. This constituted the full amount of the additional benefits claimed by plaintiff. The jury answered the first question in the affirmative and, consistently, answered the second question in the negative.

The trial justice then reviewed the evidence and, observing that there was no evidence or reasonable inferences to be drawn therefrom in support of plaintiff's claim, granted defendant's motion for a directed verdict. The plaintiff duly excepted and seasonably prosecuted her bill of exceptions.

The first three exceptions are to the evidentiary rulings heretofore related and all are without merit. The first is based on the refusal of the trial justice to permit Dr. O'Dea to give his opinion as to whether death would have occurred on May 18, 1955 as a result of the kidney condition without the intervention of the accident. The trial justice's refusal would have been justified if it rested solely on the fact that the question was asked in re-direct examination and was without relevancy as to anything asked in cross-examination. In such posture, it was within the discretion of the trial justice to permit the question or not and, assuming the question was otherwise proper, previous answers given by the doctor demonstrate that the refusal in issue did not constitute an abuse of discretion. Perhaps more pointedly, however, the refusal was not error for the reason that, having been previously asked whether death would have occurred on May 18, 1955 if it were not for the injuries, Dr. O'Dea had stated that any answer to that question would amount to pure speculation. He could not have given any different answer to the excluded question. Exception numbered one is overruled.

The second and third exceptions are predicated on the proposition that it was prejudicial error not to have permitted plaintiff to impeach Dr. King on the basis of statements contained in an affidavit of which the doctor was not the affiant. His testimony therefore that he had not treated the insured prior to the accident would have been uncontradicted by statements to the contrary not attributable to him. Exceptions numbered two and three are overruled.

The plaintiff's fourth and final exception, tàken to the granting of defendant's motion for a directed verdict, is also without merit. The plaintiff argues that in his charge to the jury, the trial justice gave two rules of law for their consideration, on one of which the evidence was sufficient to support their verdict. We are not, however, concerned with the jury's verdict. The exception is to the decision on the motion for a directed verdict on which the trial justice reserved decision in accordance with rule No. 46 of the superior court. It would seem that plaintiff has misconceived the effect of such a reservation under the rule. We review a decision in such circumstances as though it were given at the time the motion was made and the case never submitted to the jury. See *Turenne* v. *Carl G. Olson Co.*, 94 R. I. 177, 179 A.2d 323, and *Girouard* v. *John Hancock Mutual Life Ins. Co.*, 98 R. I. 1, 199 A.2d 307.

In the circumstances of the instant case, therefore, the question before us is whether on the state of the evidence after the parties had rested there was any evidence or reasonable inferences to be drawn therefrom which, viewed in the light most favorable to plaintiff, would warrant submitting the case to the jury. It was plaintiff's burden to prove by a fair preponderance of the evidence that death *was caused directly, independently and exclusively of all other causes, by a bodily injury sustained solely by external, violent and accidental means,* and did not result *directly or indirectly, or wholly or partially, from any bodily or mental disease or infirmity.*

Even so, plaintiff contends, as we understand her, that the trial justice was bound to view the evidence not only in the light most favorable to her but also in accordance with the applicable law given by him to the jury and on the authority of which the jury verdict would be consistent.

Again, this contention overlooks the procedure contemplated by rule No. 46. As heretofore stated, the trial justice

made his decision on defendant's motion as though he were reaching it at the time the motion was made and without regard to the jury's verdict.

Solely for the purpose of clarifying plaintiff's contention, it is to be noted that in his instructions the trial justice charged, inter alia, "So that if you find that in this particular situation, that the decedent suffered from a diseased kidney, I instruct you that he did have a diseased kidney, *but if you find that it was only a condition, then I instruct you that the death of the decedent was caused solely by the accident."* (italics ours)

It is to the italicized language that plaintiff refers as stating the rule of law upon which the trial justice should have considered the evidence. The principle therein stated, she argues, is the rule adopted in a number of jurisdictions, and calls our attention to them and particularly to *Kelly* v. *Prudential Ins. Co. of America,* 334 Pa. 143.

There, at page 149, the court, passing on the rule as given by the trial justice in his instructions, approved the following language, " 'The law is that if a disease, while existing, be but a condition and the accident the moving, sole and proximate cause of the death, the exception in the policy will not relieve the insurer for death so caused.' "

The foregoing principle, plaintiff urges, is that which the trial justice in the instant case should have invoked in reviewing the evidence when passing on defendant's motion for a directed verdict.

The conditions prerequisite to the obligation of the insurance company for double indemnity in the *Kelly* case are expressed in similar but not identical language to that contained in the three policies on which the instant action was predicated. If we were to equate the conditions of the one with those of the other, however, and assuming without deciding that in a proper case the doctrine espoused by the Pennsylvania court correctly sets forth the law in this juris-

diction, the instant plaintiff would take nothing thereby. There was no evidence before the trial justice here from which it could be properly inferred that the injuries sustained by the insured were "the moving, sole and proximate cause" of his death. Any such inference would conflict with the medical testimony and the only inference which can be drawn from the plaintiff's testimony as to the deceased's apparent good health is that she was unaware of his kidney disorder which the autopsy established as a fact.

All of the plaintiff's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict as directed.

*Leo Patrick McGowan, John P. Bourcier,* for plaintiff.

*Hurley, Moriarty & Moakler, John W. Moakler, John F. Sherlock, Jr.,* for defendant.