90 N.J. Super. 181 (1966)
216 A.2d 613
CELIA DINKOWITZ, PLAINTIFF,
v.
THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, A NEW JERSEY CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided January 14, 1966.
*182 Mr. George S. Hochberg for plaintiff (Messrs. Waldor, Beckerman, Hochberg & Franzblau, attorneys).
Mr. H. Russell Morss, Jr. for defendant (Messrs. O'Connor, Morss & O'Connor, attorneys).
WEIDENBURNER, J.C.C. (temporarily assigned).
When Theodore Dinkowitz died on December 10, 1958, his life was insured by three policies issued by defendant, each of which provided for the payment of double benefits in the event of accidental death. Each policy provided for the payment of the increased benefits when death resulted from "bodily injuries effected solely through external, violent and accidental means." Defendant paid the face amount of each policy to the widow-beneficiary but has refused to pay the increased benefits on the ground that the cause of decedent's death was the negligence of a physician treating decedent for an illness, and that death from such cause is expressly excluded from the increased, accidental death benefit provisions of the policies by their exclusionary clauses. Plaintiff, who is the widow-beneficiary of the insured, instituted this action for the increased benefits on each of the policies, and defendant moves for summary judgment.
For the purposes of the motion only, the parties have stipulated that the insured's death resulted solely and exclusively from the negligence of the physician attending him at the time of his death; that the physician improperly and negligently diagnosed and treated the physical illness of the insured; and that had the insured's physical illness been properly diagnosed and treated, medical authorities would agree that it is probable that the insured would have survived and lived for a substantial length of time thereafter.
*183 The stipulated facts frame an issue of law, and the case is, therefore, a proper one for disposition by a motion for summary judgment. Felbrant v. Able, 80 N.J. Super. 587 (App. Div. 1963).
Two of the three insurance policies involved contain a bold-type paragraph in the increased benefits clause entitled "Conditions and Exceptions," which reads as follows:
"No such benefit shall be payable if such death results * * * directly or indirectly from bodily or mental infirmity or disease in any form, or medical or surgical treatment therefor."
The increased benefits clause of the third policy includes a paragraph designated "Exclusions and Reductions," which reads, in pertinent part, as follows:
"The Accidental Death and Dismemberment Insurance does not cover any loss which results from or is caused, directly or indirectly, by * * * disease or bodily or mental infirmity, or medical or surgical treatment thereof, * * *."
The decisive question of whether the stated exclusionary clauses, which are common to most life and accident insurance policies containing provisions for increased benefits in the event of accidental death, exempt the insuror from the payment of the increased benefits if death results from medical malpractice, appears to be one of novel impression in New Jersey. Its resolution, therefore, must depend upon the application of the fundamental principles of construction of insuring agreements to the facts of the instant case, with the aid of such illumination as decisions in other jurisdictions may provide.
In Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475 (1961), it is said
"When members of the public purchase policies of insurance they are entitled to the broad measure of protection necessary to fullfill their reasonable expectations. They should not be subjected to technical encumbrances or to hidden pitfalls and their policies should be construed liberally in their favor to the end that coverage is afforded *184 `to the full extent that any fair interpretation will allow.' Francis, J., in Danek v. Hommer, 28 N.J. Super. 68, 76 (App. Div. 1953), aff'd 15 N.J. 573 (1954)." (at p. 482)
We have been instructed that since insurance contracts are prepared by the insuror's experts, doubts as to the existence of coverage must be resolved in favor of the insured, and "if the clause in question is one of exclusion or exception, designed to limit the protection, a strict interpretation is applied." Mazzilli v. Accident & Casualty Ins. Co. of Winterthur, 35 N.J. 1, 7-8 (1961). The employment of these eminently fair principles of construction, however, is limited by another fundamental rule to which our attention has been directed by Kampf v. Franklin Life Ins. Co., 33 N.J. 36 (1960), where Mr. Justice Schettino said:
"The problem here is one of simple contract law. As was noted by Judge Parker in Sellars v. Continental Life Ins. Co., 30 F.2d 42, 45 (4 Cir. 1929) `Courts cannot make contracts for parties. They can only enforce the contracts which the parties themselves have made.' When the terms of an insurance contract are clear, it is the function of a court to enforce it as written and not to make a better contract for either of the parties. Kupfersmith v. Delaware Ins. Co., 84 N.J.L. 271, 275 (E. & A. 1913); James v. Federal Insurance Co., 5 N.J. 21, 24 (1950). The parties are entitled to make their own contracts. McCampbell v. New York Life Ins. Co., 288 F. 465, 469 (5 Cir. 1923), certiorari denied 262 U.S. 759, 43 S.Ct. 705, 67 L.Ed. 1219 (1923). Absent statutory prohibitions, an insurance company has the right to impose whatever conditions it desires prior to assuming its obligations and such provisions should be construed in accordance with the language used." (at p. 43)
The same principle is recognized most recently in Linden Motor Freight Co., Inc., v. Travelers Ins. Co., 40 N.J. 511 (1963), in the following language:
"But we have been equally insistent that clear basic terms and particular provisions of an insurance contract may not be disregarded at will and a new contract judicially made for the parties [citations omitted]." (at p. 525)
While plaintiff recognizes the restraining, fundamental principle that the court must enforce the insuring contract *185 as it is written when the terms are clear, she contends that although the average policyholder might well realize that accidental death benefits would not be paid by the insuror for a death resulting from unexpected contingencies during the course of proper medical treatment, he would expect the additional compensation to be payable if death resulted solely from medical malpractice. It is urged that the "reasonable appreciation, understanding and expectation of the average policy purchaser" (see Harris v. John Hancock Mutual Life Ins. Co., 41 N.J. 565, 568 (1964); requires the court to distinguish between "proper" and "improper" medical treatment in the construction of the standard exclusionary clauses.
Analysis of the definitions of what constitutes medical or surgical "treatment" does not justify the distinction sought by plaintiff. Webster's New International Dictionary (2d ed. 1958) defines "treatment" as "Act, manner, or an instance of treating, especially of treating a person or animal, a patient, subject, or a substance, as in processing; handling; usage; as unkind treatment of a child; to require medical treatment."
In Barkerding v. Aetna Life Ins. Co., 82 F.2d 358 (5 Cir. 1936), the court enunciated the following definition:
"Medical and surgical treatment mean what is done by a physician of any recognized type or by a surgeon in diagnosing a bodily ailment and seeking to alleviate or cure it." (at p. 359)
In Provident Life & Accident Ins. Co., v. Hutson, 305 S.W.2d 837, 65 A.L.R.2d 1443 (Tex. Civ. App. 1957), the insured under a life insurance policy containing a clause providing additional benefits for death resulting from accidental means died from a brain hemorrhage resulting from the performance of a diagnostic test on him by a neurosurgeon. The policy on which recovery was sought specifically excluded "death caused directly or indirectly, wholly or partly, by medical or surgical treatments, or bodily or mental infirmity or any other kind of disease." In denying recovery *186 on the ground that the death resulted from medical or surgical treatment the court said:
"`The meaning of the word `treatment' as used in the policy must be given a reasonable scope. It includes not merely the actual operation in a surgical case or the giving of a prescription in a nonsurgical case, but also the preliminary examination. The treatment may, and generally does, include three stages: Preliminary, main, and final. Whatever is usually done to the patient or administered to him by a skilled physician or surgeon in any one of these stages is properly included under the term `treatment,' even though it may not be an indispensable prerequisite.' Order of United Commercial Travelers v. Shane, 8 Cir., 64 F.2d 55, 59. The opinion in this case quoted from, cites and relies upon International Travelers Association v. Yates, 29 S.W.2d 980, by the Texas Commission of Appeals and Flint v. Travelers Insurance Co., Tex. Civ. App., 43 S.W. 1079. We believe that the term `medical and surgical treatment' has the legal significance and meaning, as is set out in the opinion quoted above. Within such legal meaning must be included not only what the physician or surgeon views as treatment, that is, things done in an effort to relieve or cure a physical disease or infirmity, but also all of the things performed by a doctor or a surgeon on the body of the patient in the diagnosis of or in preparation for cure." (305 S.W.2d, at p. 839, 65 A.L.R.2d, at p. 1448)
The decisions in Pitman v. Commercial Travellers Eastern Accident Association, 284 Mass. 467, 188 N.E. 241 (Sup. Jud. Ct. 1930) and Ballam v. Metropolitan Life Ins. Co., 295 Mass. 411, 3 N.E.2d 1012 (Sup. Jud. Ct. 1936), do not furnish support for plaintiff's thesis. Indeed, the decision in Pitman may reasonably be interpreted as authority to the contrary. The agreed state of facts in that case established that decedent was operated on by competent surgeons for the removal or correction of a hernia and that the operation was successful and in no way caused or contributed to his death. It was stipulated that the insured died from tetanus as a result of the employment of a kangaroo tendon suture containing the germ in the closing of his abdominal cavity following an operation for hernia. His widow instituted an acton on a fraternal benefit society insurance policy which provided insurance for injury or death resulting from accidental means. The "General Conditions" of the policy excluded *187 from its coverage "any injury caused wholly or in part, directly or indirectly, by * * * surgical operations, medical treatment." It further exempted the insuror from the payment of any indemnity "for the death of said member resulting from an injury caused wholly or in part, directly or indirectly, by either of the foregoing causes." The court denied recovery under the terms of the policy and said:
"We think, however, that the `tying up and closing a portion of the opening in the abdominal cavity' was a necessary part of the surgical operation, or, if disconnected with that operation, was a necessary part of the medical treatment given by the operating surgeon or by the attending physician if any such were present, and that the decisions of the board of directors and of the judge disallowing the claim of the plaintiff because `the death of said Pitman resulted from an injury caused wholly or in part, directly or indirectly, by a surgical operation' were right." (188 N.E., at p. 243)
In Ballam the insured died as a result of an embolism following a surgical operation for a hernia induced by what the insuror conceded was an accidental means. In the ensuing action for the increased death benefits for accidental death under a life insurance policy on the life of the insured the court rejected the insuror's contention that the standard exclusionary clause barred recovery. Distinguishing the decision in the Pitman case the court said:
"Furthermore, a surgical operation which is proper treatment for a bodily injury sustained `solely through violent external and accidental means' does not break the causal connection between such means and the death of the insured. * * * The case of Pitman v. Commercial Travelers Eastern Accident Association * * * is distinguishable since the surgical operation considered in that case was not treatment for a condition, caused by accidental means. On the evidence, therefore, it could have been found that the surgical operation for hernia and the resulting embolism were not within the clause of exception and did not break the causal connection between the hernia and the death of the insured if the hernia itself was not within such clause." (3 N.E.2d, at p. 1014; emphasis supplied)
It is apparent, therefore, that the decisions in Pitman and Ballam do not represent judicial authority for distinguishing *188 between "proper" and "improper" medical treatment in the determination of when the standard exclusionary clause language is effective. They are consistent in their composite determination that death resulting from medical or surgical treatment of a bodily condition caused by accidental means does not exempt the insuror from the payment of the increased death benefits under the language of the standard exclusionary clause, while a death resulting from such treatment of a bodily condition not caused by accidental means is one which is expressly excluded from the coverage of the increased, accidental death benefit clause by the limiting language of the exclusionary clause.
The necessity for giving effect to the limiting language of the exclusions in the insuring clauses of insurance contracts is implicit in the case cited by plaintiff. In Harris v. John Hancock Mutual Life Insurance Co., supra, the court was concerned only with the question of whether an insured under an accident insurance policy who suffered a heart attack by reason of exertion in the performance of his regular work sustained his disability as a result of an "accident." Denying recovery on the ground that the average policy purchaser could not reasonably reach a conclusion that his accident insurance policy covered disability sustained in the manner stated, the court said:
"Whether the preceding events  the means or cause of the bodily injury resulting  are accidental will be determined by the reasonable appreciation, understanding and expectation of the average policy purchaser in the light of and having in mind the limiting language of the insuring clause." (41 N.J., at p. 568; emphasis supplied)
There is no dispute in the instant case but that the death of the insured resulted from an "accidental means." It is well settled that the mistake or negligence of a physician in diagnosing or treating a patient's illness constitutes an "accident." See Korfin v. Continental Casualty Co., 5 N.J. 154, 158-160 (1950). Yet, it is not every death by "accidental means" for which the parties bargained in the instant case. *189 The exclusionary clauses in the policies expressly exclude from the insuring agreement not only deaths resulting directly or indirectly from "disease or bodily or mental infirmity, or medical or surgical treatment thereof," but also deaths resulting from suicide, a state of war or insurrection, participating in a riot, the inhalation of gas, voluntarily or otherwise, and travel or flight in any aircraft except as a passenger.
The average policyholder could not reasonably reach a conclusion of coverage in the particular circumstances here "in the light of and having in mind the limiting language of the insuring clause." Harris v. John Hancock Mutual Life Insurance Co., supra, 41 N.J., at p. 568. Adoption of the plaintiff's contention in the light of the limiting language of the insuring clause here would "render meaningless the words by which the parties expressed their bargain" and read into the contracts something which is not there. Tomaiuoli v. U.S. Fidelity & Guaranty Co., 75 N.J. Super. 192, 205 (App. Div. 1962). As the court there stated:
"Liberality in the construction of an agreement against the drafter when ambiguity appears, or when strict construction would contravene public policy, is a salutary principle. But it should not be used as excuse to read into a private agreement that which is not there, and that which people dealing fairly with one another could not have intended. So employed, it debases the law." (at p. 207)
For the reasons stated, it is concluded that the death of the insured from medical malpractice was not included in the coverage of the insurance policies in the instant case, and the motion for summary judgment in favor of defendant is granted.