**Lucille P. McKAY, Appellee,**

v.

**BANKERS LIFE COMPANY, Des Moines, Iowa, Appellant.**

**No. 54424.**

Supreme Court of Iowa.

June 17, 1971.

Wilbur R. Dull, of Dull, Keith & Beaver, Ottumwa, for appellant.

John N. Moreland and Bailey C. Webber, Ottumwa, for appellee.

STUART, Justice.

Appellee, Lucille P. McKay, brought this action at law to recover the principal sum of $20,000 payable under an accidental death policy with appellant company covering her deceased husband in which she was the named beneficiary. The company claimed (1) the insured's death was not accidental within the language of the policy and (2) a contributing cause to assured's death was "disease * * * or medical or surgical treatment thereof" which was specifically excluded from the coverage. The trial court submitted the questions to the jury which returned a verdict for plaintiff. Defendant appealed. We reverse.

There is no material dispute in the facts. Charles A. McKay went to his family physician complaining of a cough and pain in his chest. X-rays revealed a shadow or mass in the left lung and cancer was suspected. Dr. DeKraay, a surgeon was called in for consultation and recommended a bronchoscopy. In this procedure a tube is inserted into the bronchial tubes through the mouth and windpipe and it enables the doctor to visually observe the interior of the bronchial tubes. In performing a biopsy through the tube to obtain a piece of tissue for microscopic examination the doctor severed a blood vessel. Profuse bleeding resulted which caused defendant's death in spite of emergency procedures instituted.

We assume for the purpose of our discussion here that the event described above was an "accident" within the language of the policy. It is agreed this was a surgical procedure undertaken as an aid in determining the presence or absence of a cancerous growth and was in no sense a procedure intended to alleviate or cure the disease. The specific question remaining for our determination is whether an accident resulting from surgical procedure performed for diagnostic purposes is excluded from coverage by language of a policy which provides:

"LIMITATIONS APPLICABLE TO ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE. Benefits shall not be payable for any loss to which a contributing cause is

"(a) * * *

"(b) disease, bodily or mental infirmity, or medical or surgical treatment thereof; or

"(c) * * *."

The trial court recognized that "the great weight of authority is that 'surgical treatment' includes a surgical procedure designed for diagnostic purposes" and cited many of the cases hereinafter considered. He believed however that a fact question

738

was created because Dr. DeKraay made a medical distinction between diagnosis and treatment. The Court stated:

"Since the Supreme Court of Iowa has never held that medical or surgical treatment of an unverified disease includes efforts directed toward its proper diagnosis as a matter of law, since there are authorities that it does not include such, since Dr. DeKraay, presumably an expert on the subject and certainly a 'reasonable person' did not understand the words to include his efforts to diagnose and since his testimony is undisputed in this record, it is the Court's belief that the judgment should stand until said Supreme Court has held that there is no ambiguity in the exclusionary words used and that any medical or surgical procedure for diagnostic purposes is medical or surgical treatment of a disease even though the disease be unknown at the time of the procedure.

"The defendant's use of the language has invited the litigation for had its liability been nonexistent in the event of 'surgery' or 'surgical procedure' instead of only in the event of medical or surgical treatment of a disease, the right of the plaintiff to recover would have been barred without question."

We do not believe that a doctor's technical distinction between "diagnosis" and "treatment" is sufficient to make a factual issue as to the meaning of the policy. The overwhelming weight of authority is that accidents resulting from diagnostic procedures are excluded from coverage by the language found in this policy as a matter of law.

In Provident Life and Accident Ins. Co. v. Hutson (Tex.Civ.App., 1957), 305 S.W. 2d 837, 65 A.L.R.2d 1443, the insured died as a result of the hemorrhaging of a brain stem tumor induced by a pneumoencephalogram "performed in an effort to diagnose correctly the patient's condition and in no sense was considered by medical authorities as a treatment for the curing or alleviating the condition of a patient. It

was a diagnostic test made to determine with greater accuracy the patient's physical condition and causes thereof".

The policy "specifically excluded from the rights thereunder death caused directly or indirectly, wholly or partly, by medical or surgical treatments, or bodily or mental infirmity or any other kind of disease".

The beneficiary contended that as the pneumoencephalogram was a diagnostic test leading up to treatment and not tending to cure or relieve the physical condition the death caused thereby was not the result of medical or surgical treatment.

The court said: " 'The meaning of the word "treatment" as used in the policy must be given a reasonable scope. It includes not merely the actual operation in a surgical case or the giving of a prescription in a nonsurgical case, but also the preliminary examination, including sometimes an exploratory operation or an exploratory examination. The treatment may, and generally does, include three stages: Preliminary, main, and final. Whatever is usually done to the patient or administered to him by a skilled physician or surgeon in any one of these stages is properly included under the term "treatment," even thought it may not be an indispensable prerequisite.' Order of United Commercial Travelers v. Shane, 8 Cir., 64 F.2d 55, 59. The opinion in this case quoted from, cites and relies upon International Travelers Association v. Yates, 29 S.W.2d 980, by the Texas Commission of Appeals and Flint v. Travelers Insurance Co., Tex.Civ.App., 43 S.W. 1079. We believe that the term 'medical and surgical treatment' has the legal significance and meaning, as is set out in the opinion quoted above. Within such legal meaning must be included not only what the physician or surgeon views as treatment, that is, things done in an effort to relieve or cure a physical disease or infirmity, but also all of the things performed by a doctor or a surgeon on the body of the patient in the diagnosis of or in preparation for cure. The performance of the pneumoencephalogram must be re-

garded, in law, as similar to an exploratory operation by a surgeon, in which he opens the body of a patient in search of the cause of his ailment, discovers an incurable ailment, and closes the incision without attempting any curative surgery. This, undoubtedly, would be surgical treatment, as a matter of law. Having reached this conclusion, we believe the trial court erred in overruling the appellant's motion for instructed verdict, in which the appellant contended that there was no evidence in the record that the death of the deceased was not caused directly or indirectly, wholly or partly, by medical or surgical treatment." Pp. 839–840.

In Wilson v. Travelers Insurance Co. (1968), 29 A.D.2d 312, 287 N.Y.S.2d 781, 784, insured died as a result of cardiac arrest which occurred while an anesthesia was being administered preparatory to an investigative surgical operation. The company claimed such cause of death was not covered as it resulted "directly or indirectly from medical or surgical treatment for a disease". The court without citing authority stated: "It is also clear from these facts that death resulted by reason of a surgical treatment designed and performed for the purpose of treating the disease causing the insured's hypertension" and affirmed a directed verdict for defendant.

In Order of United Commercial Travelers v. Shane (CA 8, 1933), 64 F.2d 55, 59, insured died from reaction to anesthesia administered · to lessen pain during proposed preliminary examination of posterior urethra. It was held to be medical or surgical treatment.

"The words 'medical and surgical treatment', as used in an accident insurance policy excluding loss caused by medical or surgical treatment, mean that which is done by a physician of any recognized type or by a surgeon in diagnosing a bodily ailment and seeking to alleviate or cure it, * * *." 10 Couch on Insurance 2d, § 41:440, p. 384.

"An exception of the risk of death or disability resulting from medical or surgi-

cal treatment of the insured has reference to whatever is usually done to the patient or administered to him by a skilled physician or surgeon in a preliminary examination, including sometimes an exploratory operation, as well as what is done in the actual operation in a surgical case or the giving of a prescription in a nonsurgical case." Couch, ibid, § 41:441, p. 385.

"The expression 'medical and surgical treatment', when used in the contract, includes all acts done by a physician in the preliminary care, general treatment, or later care in order to effect a cure, and may even include acts done by the patient in order to carry out the physician's orders." 1A Appleman—Insurance Law and Practice, § 426, p. 134.

In Barkerding v. Aetna Life Ins. Co. (CA 5, 1936), 82 F.2d 358, 359, the court said the words "medical and surgical treatment" are to be given their ordinary meaning in common speech and defined them as "what is done by a physician of any recognized type or by a surgeon in diagnosing a bodily ailment and seeking to alleviate or cure it".

Several other courts faced with the problem of defining medical and surgical treatment in contexts other than the one we have here have included "diagnosis" as part of the "treatment" of a disease. Hester v. Ford (1930), 221 Ala. 592, 130 So. 203, 206 (malpractice); Stephens v. Williams (1933), 226 Ala. 534, 147 So. 608, 612 (malpractice); Gesmundo v. Bush (1947), 133 Conn. 607, 53 A.2d 392, 394 (workmen's compensation); Nichols v. North Carolina Mutual Life Insurance Co. (D.C. Mun.App.1960), 162 A.2d 499, 500 (hospitalization policy); Simon v. Hospital Service Ass'n of Pittsburgh (1960), 192 Pa.Super. 68, 159 A.2d 52, 54–55 (hospitalization policy—distinguishes between "check-up" and diagnostic procedures in connection with a specific illness); Zanni v. Rudolph Poultry Equipment Co. (1969), 105 N.J.Super. 325, 252 A.2d 212, 213 (workmen's compensation); Pfahler v. Eclipse Pioneer Division of Bendix Aviation Corporation

(1956), 21 N.J. 486, 122 A.2d 644, 646 (workmen's compensation); Kirschner v. Equitable Life Assur. Soc. (1935), 157 Misc. 635, 284 N.Y.S. 506, 510 (material misrepresentations in policy application); Petty v. Sloan (1955), 197 Tenn. 630, 277 S.W.2d 355, 360 (lease contract).

Other courts in considering cases involving accidental death benefits, but not involving diagnosis, have refused to restrict the exclusionary clause to the extent urged by claimants therein. Wilson v. Business Men's Assurance Co. of America (CA 9, 1950), 181 F.2d 88 (death from post operative sedatives); Westmoreland v. Preferred Acc. Ins. Co. (C.C.Ga.1896), 75 F. 244 (death from anesthesia administered prior to replacing hemorrhoids); Bracey v. Metropolitan Life Ins. Company (1967), 54 Misc.2d 175, 282 N.Y.S.2d 121 (asphyxia due to post tonsillectomy bleeding); Dinkowitz v. Prudential Ins. Co. (1966), 90 N.J.Super. 181, 216 A.2d 613, 616 (malpractice as accident); International Traveler's Ass'n v. Yates (Tex.Comm. of App. 1930), 29 S.W.2d 980 (death from anesthesia prior to tonsillectomy). But see: Beile v. Traveler's Protective Ass'n (1911), 155 Mo.App. 629, 135 S.W. 497.

Appellee cites two cases in support of her position. Massachusetts Mutual Life Insurance Co. v. Allen (Okl.1966), 416 P. 2d 935, 941, involved alleged misrepresentations in a policy application as to previous surgery. The court made a distinction between a biopsy and surgery stating: "By definition a surgical operation is a procedure carried out on a living body for effecting a cure by altering an existing abnormal state or condition, as distinguished from medical. A biopsy is defined as the removal of tissue, cells, or fluids from the living body for examination or study for diagnostic purposes. It is doubtful if the ordinary person would have considered this biopsy as 'surgery'. In any event we cannot conclude that the Company would have discovered Hodgkins disease if the biopsy had been reported." Neither the language nor the issues were the same. Even if we accept the distinction made by the Oklahoma court between "surgical and medical" it would not avail appellee here because both terms were included in the exclusionary clause.

In Bryant v. Montgomery Ward & Company (Mo.App.1967), 416 S.W.2d 195, 199, the court held a medical examination for the purpose of making a report to the insurance company was not "medical treatment" tolling the workmen's compensation statute of limitations. The court said: "When the Legislature said treatment 'to cure and relieve from the effects of the injury', we do not think it meant 'examination to diagnose a condition'. * * * The grouping of the words 'medical, surgical, and hospital treatment' by the Legislature shows plainly what the lawmakers had in mind, and clearly does not include mere diagnosis * * *. The above words, not being of a peculiar or technical nature, 'shall be taken in their plain or ordinary and usual sense'. Section 655, R.S.Mo. 1939, * * *."

In the instant case there is no limiting definition of treatment "to cure and relieve from the effects of the injury". The results reached in that case are understandable but not authority for the proposition argued here.

We therefore hold as a matter of law "medical and surgical treatment" as used in the exclusionary clause of the accidental death policy on the life of appellee's husband includes medical and surgical procedures performed for the purpose of aiding in the diagnosis of a particular disease.

In view of this position we need not decide other alleged errors urged by appellant.

For the reason stated the trial court is reversed and the case is remanded for judgment in accordance herewith.

Reversed and remanded for judgment.

All Justices concur, except REYNOLDSON, J., who takes no part.