Larry GOSS, et ux., Appellants,

v.

**MID–WESTERN LIFE INSURANCE COMPANY, Appellee.**

No. 988.

Court of Civil Appeals of Texas, Tyler.

Dec. 30, 1976.

Rehearing Denied Jan. 27, 1977.

Blake Bailey, Wellborn & Houston, Henderson, for appellants.

O. Joseph Damiani, Houston, for appellee.

McKAY, Justice.

This case involves the interpretation of an exclusion in an insurance policy. Appellants, Larry Goss and wife, Ann Goss, filed suit on a family hospitalization insurance policy issued by appellee, Mid-Western Life Insurance Company of Texas. At the close of plaintiff-appellants' evidence, defendant-appellee made a motion for directed verdict which was sustained by the court. The court entered judgment that Mr. and Mrs. Goss take nothing by their suit, from which judgment they appealed.

On November 18, 1974, appellants applied for a family hospitalization plan from appellee through its agent, Emmett Knowles. The policy became effective February 1, 1975. At the time the policy was applied for Knowles inquired about the prior medical history of Mrs. Goss. She told him that "I had had trouble with my stomach." This prompted Knowles to add an exclusion of "any disease or disorder of the gastro-intestinal tract, any complications thereof, treatment or operation therefor." Later, on February 16, 1975, Mrs. Goss had an appendicitis attack, and she had an appendectomy. Mid-Western refused to pay her medical and hospital bills, and this suit resulted.

Upon trial of the matter the sole issue, other than attorney's fee, was whether the appendicitis attack was excluded under the above provision, or in other words, whether the appendix was part of the "gastro-intestinal tract". The appellants produced two expert medical witnesses, Dr. Marlin T. Braswell and Dr. F. Donald Haygood. When Dr. Braswell was asked to explain in detail all of the parts of the human anatomy which are covered by the phrase "gastro-intestinal," he answered:

"The gastro-intestinal tract begins with the intake of food, which passes across the lips and into the oral cavity, the mouth and is propelled down the pharynx by the tongue, the food then goes into the esophagus, and is propelled into the stomach in which it is mixed with enzymes and acids of digestion. It is then emptied into the small bowel, where digestion is completed, and the contents of the food then empties into the colon, which is propelled into the rectum and evacuated through the anus. This is the gastro-intestinal system, there are allied associated parts of the gastro-intestinal system, which would include the pancreas and the

gall bladder and ducts, which are included in the gastro-intestinal system."

Dr. Haygood, when asked roughly the same question, replied:

"Well, gastro means stomach. Intestinal means intestine, so the word 'gastro-intestinal' could strictly be limited to mean the stomach and the intestine, although when one speaks of the gastro-intestinal or GI tract, this generally refers to the entire alimentary canal, which starts with the mouth, the pharynx, the esophagus, the stomach, the entire small intestine, the entire large intestine, the rectum and ending at the anus. Embryologically, the appendix rises with the cecum, which is the right portion of the large intestine, and it communicates with and is a part of the gastro-intestinal tract."

Dr. Braswell also diagnosed her prior stomach problems as (1) "acute interitis," occurring in April, 1974, and (2) "chronic cholocystitis and rheumatoid arthritis," occurring in September, 1974. Both doctors testified that an appendicitis attack cannot be forecast from previous gastro-intestinal disorders. Upon objection of appellee, the court excluded the testimony of both Mr. and Mrs. Goss as to (1) what they thought gastro-intestinal meant, and (2) what Knowles had said about it before they signed the contract on the basis that such was nonexpert testimony in an area where expert testimony is needed and that such testimony was hearsay, respectively. The court also excluded the testimony of Knowles as to what "gastro-intestinal" meant on the objection of appellee that (1) such would violate the parol evidence rule, (2) it would be giving an opinion as to medical terminology without the proper predicate being laid, and (3) the agent had no right by law to "abrogate, modify or make any contract with a particular insured," on authority of Article 21.04 of the Insurance Code, V.A.C.S., which provides a life insurance agent "shall not have the power to waive, change or alter any of the terms or conditions of the application or policy." At the conclusion of the appellants' evidence the court granted a directed verdict for appellee.

Appellant brings two points of error. The first complains that the trial court erred in sustaining appellee's motion for directed verdict "which was based on the wording of the exclusion provision of the policy, which excluded payment for medical expenses incurred as a result of gastro-intestinal disorders". They contend that enough evidence was admitted to support the submission of the issue to the jury. We agree.

In considering whether a directed verdict was proper, an appellate court must view the evidence of the complaining party in its most favorable light in support of the finding of the vital fact, considering only the evidence and the inferences which support the finding and rejecting the evidence and the inferences which are contrary to the finding. *Douglass v. Panama, Inc.,* 504 S.W.2d 776, 777 (Tex.1974); *Leyva v. Pacheco,* 163 Tex. 638, 358 S.W.2d 547, 550 (1962). In order to sustain the action of a trial court in granting a directed verdict, it must be determined that there is no evidence of probative value upon which the jury could have found on the issue in question. *Douglass v. Panama, Inc.,* supra. Additionally, expert opinion testimony does not establish a fact as a matter of law. *Board of Fireman's Relief & Retirement Fund of Houston, Trustees v. Marks,* 150 Tex. 433, 242 S.W.2d 181, 185 (1951). It is not conclusive, but merely raises an issue of fact to be submitted to the jury, who in determining the facts, are not bound by the opinions of the witnesses. *Luttes v. State,* 159 Tex. 500, 324 S.W.2d 167, 189 (1958); 24 Tex.Jur.2d, Evidence, Section 549, pp. 42–45.

Viewing the evidence with these rules in mind, we are of the opinion that appellants did raise a fact issue as to the meaning of the term "gastro-intestinal tract". Dr. Braswell carefully described the parts of the GI tract without naming the appendix. He neither included it nor excluded it. Dr. Haygood testified that under one of the two meanings of the term "gastro-intestinal tract," the appendix

would not be included, but under the other it would be included. Both doctors testified that appendicitis could not be forecast from prior gastro-intestinal disorder. Viewing this evidence in a light most favorable to appellants and disregarding all other evidence, a jury could find that the appendix was not part of the "gastro-intestinal" tract. Also it must be pointed out that the only testimony allowed on the meaning of the term was elicited from medical experts. Even if this testimony could only be interpreted as meaning that the appendix was part of the gastro-intestinal tract, such was not conclusive of the fact, and would not command an instructed verdict. We hold that it was error for the trial court to withdraw this question from the jury.

Appellants' second point complains that the trial court erred in excluding the testimony of Larry Goss, Ann Goss and Emmett Knowles as to what they intended the term "gastro-intestinal tract" to mean at the time of application for the insurance policy. Since we have disposed of the appeal on the first point, consideration of this point is not necessary.

The judgment of the trial court is reversed, and the cause is remanded for new trial.