AETNA LIFE INSURANCE COMPANY, Appellant,

v.

Gail G. SCARBOROUGH, Appellee.

No. 7997.

Court of Civil Appeals of Texas, Beaumont.

Sept. 8, 1977.

Rehearing Denied Oct. 6, 1977.

W. C. Henderson, Dallas, for appellant.

Roger L. Turner, Dallas, for appellee.

KEITH, Justice.

The insurer, defendant below, appeals from a judgment which awarded plaintiff a recovery for medical expenses she incurred in a surgical procedure, together with penalty, interest, and attorney's fees.

Plaintiff's husband entered the employment of Tandy Corporation and filled out an application for coverage by a group insurance policy issued through his employer by defendant. A certificate was issued, the effective date being June 16, 1974, which provided coverage for medical expenses incurred by family members, including plaintiff, his wife. This policy contained a special condition:

"If, at the time a family member becomes insured under this Title, he has received treatment for a condition resulting from a disease or injury during the three month period just before he became insured under this Title, Covered Medical Expenses for that condition are subject to the limitations described below. *Treatment of a condition means receiving either medical services or prescribed drugs or medicines.* [emphasis ours]

1. Any expenses incurred in connection with such condition during the first twelve months while insurance is in force will not be considered Covered Medical Expenses."

Bearing in mind the date of the certificate, the effect of the quoted language was to exclude from coverage any medical expenses incurred in the treatment for a condition for which the insured had received treatment during the period March 16–June 16, 1974.

On June 6, 1974, plaintiff was examined manually by Dr. Ensey, a gynecologist, and he made a pap smear. Dr. Ensey testified that his examination revealed an abnormality of plaintiff's ovarian function and that the ovaries were enlarged. On June 17, one day after the effective date of the insurance coverage, she returned to Dr. Ensey for another examination and some improvement was noted. The doctor made a writ-

ten report to plaintiff, dated June 18, 1974, reciting his findings on his first and second examinations, the results of the laboratory tests and concluded: "Recommend: excision of ovaries and frozen section."

On July 1, Dr. Ensey performed the suggested operation and the surgery involved the abnormality initially revealed by his first examination. Dr. Ensey testified by deposition that his first examination was a "routine physical" examination and did not constitute treatment for the conditions he operated for shortly thereafter.

We note in passing that the doctor's conclusion that his examination of plaintiff was not treatment is an apparent effort to construe the exclusionary clause of the policy, and is like unto hearsay. He was not qualified to construe the policy or to give an opinion on the subject. While a physician may give his opinion on physical facts, or as medical facts, he may not determine the legal classification or effect of such facts; that is a matter entrusted to the courts.

The jury found that plaintiff did not receive treatment "for a condition resulting from a disease or injury related to the condition for which she received surgery on July 1, 1974."[1] The other issue related to attorney's fees; and, since defendant makes no attack thereon, we need not concern ourselves with such issue.

Since defendant brings forward "no evidence" points by contending that it was entitled to a directed verdict or a judgment non obstante veredicto, we must consider only the evidence and inferences tending to support the finding and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). And, it must be remembered that the burden was upon the plaintiff to establish that the procedures used by Dr. Ensey on June 6, 1974, did not constitute "treatment" *as defined in the policy*—and not as defined by Dr. Ensey. *Sherman v. Provident American Insurance Company*, 421 S.W.2d

---

1. The issue contained, in the form of an instruction within the issue itself, the italicized language quoted earlier in the pleaded exclusion.

652, 654 (Tex.1967); *Mid-Western Life Insurance Co. v. Goss*, 552 S.W.2d 430 (Tex. 1977).

The facts in our case are practically without dispute, and the only question presented for determination is whether plaintiff received treatment, as defined in the policy, when she visited Dr. Ensey on June 6, 1974.

Defendant relies heavily upon the holding in *Provident Life and Accident Insurance Co. v. Hutson*, 305 S.W.2d 837, 839, 65 A.L. R.2d 1443 (Tex.Civ.App.—Beaumont 1957, writ ref'd n. r. e.). In *Hutson*, the insured died as the result of complications following a surgical procedure known as a pneumoencephalogram; and, this court specifically noted that the test was "performed in an effort to diagnose correctly the patient's condition and in no sense was considered by medical authorities as a treatment for the curing or alleviating the condition of a patient. It was a diagnostic test . . . ."

Yet, the court, quoting from another case, used this language:

" 'The meaning of the word "treatment" as used in the policy must be given a reasonable scope. It includes not merely the actual operation in a surgical case or the giving of a prescription in a non-surgical case, but also the preliminary examination, including sometimes an exploratory operation or an exploratory examination. The treatment may, and generally does, include three stages: Preliminary, main, and final. Whatever is usually done to the patient or administered to him by a skilled physician or surgeon in any one of these stages is properly included under the term "treatment," even though it may not be an indispensable prerequisite.' " (305 S.W.2d at 839–840)

The *Hutson Court*, after reviewing other authorities, continued:

"Within such legal meaning [as set out in the cited authorities] must be included not only what the physician or surgeon views as treatment, that is, things done in an effort to relieve or cure a physical disease or infirmity, but also all of the things performed by a doctor or a surgeon on the body of the patient in the

diagnosis of or in preparation for cure." (305 S.W.2d at 840)

We are unable to find that this square holding has ever been challenged by any court during its twenty-year history. Indeed, to the contrary, it has received wide acceptance by the courts throughout the nation. See, e. g., *McKay v. Bankers Life Company*, 187 N.W.2d 736, 738 (Iowa 1971); *Dinkowitz v. Prudential Ins. Co.*, 90 N.J.Super. 181, 216 A.2d 613, 616 (1966).

The Supreme Court of Oregon quoted at length from *Hutson* in *Zeh v. National Hospital Association*, 233 Or. 221, 377 P.2d 852, 857 (1963), where the critical language in the exclusion was "medical care". The plaintiff consulted a neurologist during the exclusionary period for pain in his leg, and plaintiff underwent other diagnostic tests before receiving chiropractic treatment.

The Oregon Court addressed itself to a contention similar to the one which plaintiff advances in this case: "It is true, as the plaintiff's brief states, that Dr. Raaf did not give the plaintiff any pills or other form of medication; . . . ." (377 P.2d at 857) It answered the contention by saying:

"If the consultation with the medical man is for the purpose of medication, or of diagnosis so that he may know what he must do next, it should be deemed medical care." (Id. at 858)

And, so it is here. Plaintiff went to Dr. Ensey on June 6 because of pain in her ovaries and the examination revealed the cause thereof. She followed the recommendation and obtained relief. As said in *Zeh*, supra:

"Services that are received from physicians within the [excluded period] must be examined for the purpose of determining whether they were undergone because the insured's preexisting condition was troubling him." (Id.)

See also, *70 C.J.S. Physicians and Surgeons § 1, p. 817 (1951); 1A Appleman, Insurance Law & Practice, § 426, p. 134 (1965).*

Plaintiff criticizes the holding in *Hutson*, supra, saying that it "is a classic example of our saying that 'bad facts make bad law' ",

but we disagree. Plaintiff's counsel also calls our attention to several recent cases[2] which we have examined and do not find to be either persuasive or controlling. Indeed, in the last case cited in the footnote, the Supreme Court opinion lends support to defendant's argument.

Since we are of the opinion that *Hutson* and its progeny are dispositive, plaintiff's recovery may not stand under the undisputed record which we reviewed. Consequently, we sustain defendant's fifth point of error[3] and reverse the judgment of the trial court and now render judgment for the defendant.

REVERSED and RENDERED.

---

2. Plaintiff cites *Coker v. Travelers Ins. Co.*, 533 S.W.2d 400 (Tex.Civ.App.—Dallas 1976, no writ); *Ramsay v. Maryland American General Ins. Co.*, 533 S.W.2d 344 (Tex.1976); and *International Investors Life Ins. Co. v. Utrecht*, 536 S.W.2d 397 (Tex.Civ.App.—Dallas 1976, no writ). These cases, apparently, are cited for the proposition that the policy provision involved in our suit is ambiguous. No such contention was urged in the trial court.

She also cites *Goss v. Mid-Western Life Ins. Co.*, 545 S.W.2d 878 (Tex.Civ.App.—Tyler 1976), reversed, 552 S.W.2d 430 (Tex.1977).

3. Point of Error No. Five: "The Trial Court erred in not granting Defendant's Motion for Judgment N.O.V. in that the jury's finding to Special Issue No. 1 is not supported by the evidence."