EMMA H. KIMBALL *vs.* MASSACHUSETTS ACCIDENT COMPANY.

MAY 26, 1922.

PRESENT: Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1)   Liability Insurance.   Death by "Accidental Means."*

A policy insured a physician and surgeon against "loss or disability as herein defined, resulting directly, independently and exclusively of any and all other causes from bodily injury effected solely through accidental means." The policy provided that "the insurance hereunder shall not cover any injury, fatal or non-fatal, sustained by insured while participating in or in consequence of having participated in aëronautics, from ptomaines or from disease."

Insured died from erysipelas, through an open boil becoming infected with the erysipelas germ.   Deceased had treated erysipelas cases while suffering from the boil. —

*Held,* that the death of insured was the result of disease and not of bodily injury effected solely through accidental means.

*(2)   Liability Insurance.   Death by "Accidental Means."*

In determining that an injury occurred by "accidental means" it should appear that the cause or means governed the result and not the result the cause; and however unexpected the result might be, no recovery should be allowed under such a provision unless there was something unexpected in the cause or means which produced the result.

ASSUMPSIT.   Heard on exceptions of plaintiff and over-ruled.

SWEENEY, J.   This is an action of assumpsit to recover the amount due upon an accident insurance policy issued by

the defendant to Harry W. Kimball, July 16, 1914. The plaintiff is the beneficiary named in said policy and seeks to recover from the defendant on the ground that the death of Dr. Kimball was caused solely by accidental means within the terms of said policy. The action was tried by a justice of the Superior Court, jury trial having been waived, and decision was given for the defendant. The plaintiff has duly brought the case to this court upon her bill of exceptions and now claims that said decision was contrary to the law and the evidence and the weight thereof.

The policy insured Harry W. Kimball, by profession a physician and surgeon, against "loss or disability as herein defined, resulting directly, independently and exclusively of any and all other causes from bodily injury effected solely through accidental means." It contained many provisions and limitations one of which was that "the insurance hereunder shall not cover any injury, fatal or nonfatal, sustained by the insured while participating in, or in consequence of having participated in aëronautics, from ptomaines, or from disease."

The evidence proved that Dr. Kimball was a practicing physician specializing in dermatology; that he died March 28, 1920; and that the cause of his death was erysipelas.

The trial justice found that the deceased called Dr. Gifford, March 20, 1920, and complained of a boil on the back of his neck about where his collar button would come. He told the doctor that the boil had started about a week before and that he had been dressing and taking care of it himself. Dr. Gifford had treated the deceased for several abscesses prior to this time and recognized this one as being different from the others and concluded that erysipelas had developed. Dr. Richardson agreed with this diagnosis and both of these experts testified that erysipelas is an infectious disease, and that for a person to develop it he must pick up the particular kind of an organism that causes the disease by direct contact.

Against the objection of the defendant, Dr. Gifford was permitted to testify that the deceased told him that he had seen three erysipelas cases within a week before he called Dr. Gifford. The trial justice found that the plaintiff's proof did not show that the erysipelas was effected by accidental means, and that the open boil became infected with the erysipelas germ in some unknown way.

The plaintiff claims that Dr. Kimball received the infection from contact with an erysipelas germ while engaged in the treatment of patients suffering from erysipelas and that this infection was "bodily injury effected solely through accidental means." To support this claim, plaintiff cites the case of *Hood & Sons* v. *Maryland Casualty Co.*, 206 Mass. 223  In this case the policy sued upon was entitled "Manufacturers Employers Liability Policy." The contract which it contained was one of indemnity in which the defendant engaged to make good to the plaintiff any loss or damage which it might sustain by reason of its liability to its employees for bodily injuries accidentally suffered by them while engaged in doing the work which they were employed to do. The insurance was liability insurance, so-called, and not insurance against accidents.

The liability insured against was that "imposed by law upon the assured for damages on account of bodily injuries or death accidentally suffered . . . by any employee." Plaintiff's employee, on duty as a hostler in its stables, contracted glanders and brought an action against the plaintiff for negligently putting him to work in the stable and thereby exposing him to the disease. Judgment was rendered in his favor and then plaintiff brought the present action to recover the amount paid from the insurance company. The question before the court was whether the injury to the employee was brought about accidentally, within the fair scope and meaning of the policy, or whether it was the result of disease contracted while in the employ of the plaintiff but for which the defendant was not liable. The court held that the infection which caused the disease

from which the employee suffered was due to accident, saying: "It was in the nature of an accident that he was set to work upon or cleaning up after horses that had glanders, and it was in the nature of an accident that he became infected with the disease." The court held the defendant liable to pay the damages which the plaintiff had paid to its employee.

The later case of *Smith* v. *Travelers Insurance Company,* 219 Mass. 147, is more in point and is against the claim of the plaintiff. The court held that the plaintiff could not recover in an action brought on a policy of accident insurance wherein the deceased was insured against death resulting from "bodily injuries, effected directly and independently of all other causes, through external, violent and accidental means." It appeared that the deceased was using a nasal douche as he had been in the habit of doing; that he "snuffed" or drew breath into his nostril more violently than he usually did and consequently there passed through his nostril, and thence by way of Eustachian tube through a hole in the mastoid bone in the middle ear into his brain, streptococcus germs which caused his death from spinal meningitis. The court said, "there was nothing accidental in the inhalation of this douche. The deceased did exactly what he intended to do. This particular act of inhalation, though harder or more violent than usual, was not, so far as appears, harder or more violent than he intended it to be. There was no shock or surprise during the inhalation which made him draw a deeper breath than he intended to draw, nothing strange or unusual about the circumstances. The external act was exactly what he designed it to be, though it produced some internal consequences which he had not foreseen. Accordingly there was no bodily injury effected through a means which was both external and accidental. But it is only for a death resulting from injury effected through such means that the defendant is made responsible by the policy. It is not sufficient that the death or the illness that caused the death may have been

an accidental result of the external cause, but that cause itself must have been not only external and violent, but also accidental.

"We cannot find that there was any 'external, violent and accidental means' producing the injury which caused the death other than this inhalation by the deceased of the nasal douche, which he took, not accidentally in any sense of that word, but purposely, with full knowledge of its character, and in the very way in which he intended to take it."

(1)    The defendant contends that the deceased died as the result of disease and that erysipelas causing his death was not "bodily injury effected solely through accidental means."

A case in point sustaining the defendant's contention is that of *Bell* v. *State Life Insurance Co.* (Georgia), 101 S. E. Rep. 541. This was a suit on a policy of life insurance for the recovery of the disputed double indemnity due for the death of the assured if it could be shown that his death resulted "from bodily injury sustained and effected directly through external, violent and accidental means exclusively and independently of all other causes." The petition stated that the insured was a physician by profession and that he attended professionally a child suffering from the disease known as erysipelas. It also stated that the insured wore glasses and that in adjusting his glasses while attending said patient he accidentally caused a scratch or abrasion of the skin on or near his right ear, which scratch or abrasion of the skin became infected with the germs of the disease of erysipelas resulting in his death.

The court found that the evidence showed that the abrasion upon the ear occurred at the office of the deceased and that he continued to treat and come in immediate contact with the patient affected with erysipelas, living about two miles away, for several days thereafter; and that there was no direct or specific evidence tending to show that the fatal infection might have been contracted from germs,

collected upon the glasses, which entered the wound or scratch upon the ear at the time that the abrasion occurred.

The court held that if one who has knowingly sustained an accidental abrasion upon the exposed surface of his body thereafter continues to bring himself in contact with and treat a patient affected with a virulent type of contagious disease, such as is capable of being transmitted through immediate proximity with such exposed wound or abrasion, and as a result of such voluntary risk he thus becomes infected with and contracts the disease and it results in his death, the proximate cause thereof cannot properly be said to be the original "bodily injury" sustained and effected directly through violent, external and accidental means exclusively and independently of all other causes; and affirmed judgment for the defendant.

Another case upon the nonliability of the defendant is that of the *Maryland Casualty Co.* v. *Spitz*, 246 Fed. 817, L. R. A. 1918 C 1191, wherein the Circuit Court of Appeals held that death from erysipelas was not "accidental" within the meaning of a policy insuring against death by "accidental means" when it was caused by germs entering a boil when scratched by the unclean hands of the deceased. The court said the deceased seems to have done just what he intended to do, namely, to rub or scratch his neck to relieve the itching and in our opinion breaking the scab during the process was a probable result, one reasonably to be expected. The court quoted from *U. S. Mutual Accident Association* v. *Barry*, 131 U. S. 100, as follows: "If a result is such as follows from ordinary means voluntarily employed in a not unusual or unexpected way, it cannot be called a result effected by accidental means."

In determining that an injury occurred by "accidental means" it should appear that the cause or means governed the result and not the result the cause; and that, however unexpected the result might be, no recovery could be allowed under such a provision unless there was something unexpected in the cause or means which produced the result.

*New Amsterdam Casualty Co.* v. *Johnson,* L. R. A. 1916 B, note p. 1021.

In the case of *Lehman* v. *Great Western Acc. Asso.,* 155 Iowa 737, 42 L. R. A. (N. S.) 562, the court said, in construing the phrase injury by "accidental means," "It is not sufficient that there be an accidental, that is, an unusual and unanticipated, result.    The 'means' must be accidental; that is, involuntary and unintended."

The policy in this case provides that recovery for the death can be had only when the insured dies from bodily injuries effected solely through accidental means resulting directly, independently and exclusively of any and all other causes.    When a man is injured while doing merely what he intends to do, he is not injured by an accident, unless the course of his action has been interrupted or deflected by some unforeseen or unintended happening.

The "bodily injury" the deceased had was an open boil or abscess and the primary question is, was this caused by "accidental means"?    According to his statement to Dr. Gifford, he had been treating and dressing it for a week and there is no testimony to show that its open condition or infection was the result of "accidental means."    The trial justice has correctly found that there is no testimony to show that the open boil was infected with the erysipelas germ by "accidental means".    The infection of the boil by the erysipelas germ was not of the kind that naturally develops from the boil itself.    Erysipelas was an independent and intervening cause of death.    The testimony shows that the death of the insured was the result of disease and not of bodily injury effected solely through accidental means.

There is no error in the decision of the trial justice.    The plaintiff's exceptions are overruled and the case is remitted to the Superior Court with direction to enter judgment for the defendant upon the decision.

*William J. Brown, Archibald C. Matteson,* for plaintiff.

*Edward C. Stiness, Daniel H. Morrissey, Christopher J. Brennan,* for defendant.