**Bon C. WEST**

v.

**COMMERCIAL INSURANCE COMPANY OF NEWARK, NEW JERSEY.**

No. 84–522–Appeal.

Supreme Court of Rhode Island.

July 17, 1987.

Marvin Brill, Providence, for plaintiff.

Kathleen Mahaghan, Patrick Hayes, Corcoran, Peckham, & Hayes, Newport, for defendant.

## OPINION

FAY, Chief Justice.

The plaintiff brought this civil action in Superior Court to enforce disability payments under an insurance policy issued by the defendant, Commercial Insurance Company of Newark, New Jersey (insurer). At trial, at the close of the plaintiff's case, the defendant moved for a directed verdict on three grounds, only one of which was granted and which therefore forms the basis of this appeal.

The essential facts leading up to the granting of defendant's motion for directed verdict and subsequent judgment entered thereon are as follows.

The plaintiff, Bon C. West (West), in January 1978 was shoveling snow from his walkway. "As he was shoveling the snow he took a little bit of snow on the shovel and * * * as he turned slightly he felt something pop or snap in his back. He was immediately * * * physically disabled." The pain was such that West had to crawl

to his house. He went to bed and two days later saw Dr. Henry S. Urbaniak. The doctor prescribed bed rest and the wearing of a back support. Throughout the period between 1978 and 1980 West, when pain would arise, would take bed rest and wear his back support. Around April 1, 1980, however, the pain became unbearable, and he again sought out Dr. Urbaniak. The doctor prescribed two successive periods of total bed rest. When this did not ease the back pain, more intensive diagnostic tests were performed. Those tests showed disc damage and a laminectomy was performed in May of 1980.[1]

Because of West's disability the insurer paid West benefits under a policy insuring against "loss or disability resulting directly from accidental bodily injury * * * or * * * loss or disability * * * resulting from sickness."

Under that policy, payments would be made under the "accident" provision for 260 weeks whereas payments under the "sickness" provision would be limited to 52 weeks.

West received payment up to and including the 52nd week when payment stopped. West, believing that he was insured for this injury under the accident provision, instituted suit in Superior Court in order to collect for the full 260-week period.

At a jury trial West presented evidence of the injury and its occurrence, as well as medical testimony concerning the injury. At the close of plaintiff's case, defendant moved for a directed verdict on three grounds. The trial justice denied defendant's motions concerning whether adequate notice of claim under the terms of the policy had been given and whether plaintiff had offered sufficient evidence of having been totally disabled from performing the duties covered under the policy. The trial justice did grant defendant's motion for directed verdict on the grounds that *Kimball v. Massachusetts Accident Co.*, 44 R.I. 264, 117 A. 228 (1922), was dispositive of the case at bar. Essentially defendant argued, and the court agreed, that there was

---

**1.** "Laminectomy—removal of that part of a vertebra which covers the spinal cord posteriorly."

4 Traumatic Medicine and Surgery for the Attorney 749* (Cantor ed. 1961).

no evidence that the occurrence of this injury was brought about by "accidental means" as that term is understood and construed in *Kimball.* Therefore, the injury was not an "accidental bodily injury," which would be covered under this policy. The trial justice granted defendant's motion for directed verdict and entered judgment thereon.

The plaintiff appeals from the directed verdict and judgment on the ground that *Kimball* and the "accidental means" cases are inapplicable to the case at bar. The plaintiff argues that the evidence as presented establishes an "accidental bodily injury" as a matter of law or at least presents sufficient evidence on that question to require submission to the jury. The plaintiff also argues that the accidental means/result distinction adopted in *Kimball* should be overruled and instead a rule should be adopted that would recognize the common understanding of the term "accident," which would therefore meet the reasonable understanding and expectations of policy holders.

We are in complete agreement with plaintiff that the holding in *Kimball* is inapplicable to the case at bar. The insurance policy in *Kimball* insured against "loss or disability as herein defined, resulting directly, independently and exclusively of any and all other causes from bodily injury effected solely through accidental means." 44 R.I. at 265, 117 A. at 228. The court, in construing that terminology, stated: "In determining that an injury occurred by 'accidental means' it should appear that the cause or means governed the result and not the result the cause; and that, however unexpected the result might be, no recovery could be allowed *under such a provision* unless there was something unexpected in the cause or means which produced the result." (Emphasis added.) Id. at 269, 117 A. at 230. Further, this court in *Kimball* quoted *Lehman v. Great Western Acc. Asso.,* 155 Iowa 737, 133 N.W. 752, 42 L.R.A. (N.S.) 562, in which the Iowa court construed the phrase "accidental means," stating: "It is not suf-

ficient that there be an accidental, that is, an unusual and unanticipated result. The 'means' must be accidental, that is, involuntary and unintended." 44 R.I. at 270, 117 A. at 230.

In the case at bar, no such limiting language appears anywhere in the policy that would invoke the means/result distinction as delineated in *Kimball.* The policy in question here uses the terminology in the insuring clause, "This policy insures against: (1) loss or disability resulting directly from accidental bodily injury * * * or (2) loss or disability * * * resulting from sickness." There are no definitions of "accidental bodily injury" or "sickness" in the policy. Further, in part 10 of the policy entitled "Exceptions and Reductions," the only limitations appearing thereunder exclude or limit coverage for death or disability or other loss occurring during wartime or as a result of suicide, air travel, or pregnancy, except as expressly provided for in other provisions in the policy.

■ Thus we are left with a policy that provides for insurance coverage for disability "resulting directly from accidental bodily injury." "In interpreting the contested terms of the insurance policy, we are bound by the rules established for the construction of contracts generally. * * * The language used in the policy must be given its plain, ordinary, and usual meaning." *Malo v. Aetna Casualty and Surety Co.,* 459 A.2d 954, 956 (R.I. 1983). Unquestionably, the plain, ordinary, and usual understanding of "accidental" does not give rise to a meaning limited to the characterization of the causation of the injury exclusive of the characterization of the injury itself. Indeed, Webster's Third New International Dictionary 11 (1976) defines both "accidental injury" and "accidental means." "Accidental injury" is defined as "injury occurring as the unforeseen and chance result of a voluntary act" whereas "accidental means" is defined as "an act or event preceding harm or damage to an insured that is sudden, unexpected, and not intended or designed by any person." [2] Here no con-

**2.** Although there exists a technical distinction between accidental-"means" and accidental-"re-

tention is made that West, in shoveling his walkway, intended to injure his back while turning his body while shoveling snow. Nor is such an injury to be expected or foreseen as being the natural and probable consequence of turning one's body while shoveling snow.

■ We think the term "accidental bodily injury," giving the terminology its plain, ordinary, and usual meaning, would describe an injury to the body that was unexpected and/or unintended by the insured without regard to any distinction between the resultant injury and the "means" or causation of that injury. The fact that the insured was injured while doing an act that he fully intended to do, shoveling snow, does not take the occurrence of this injury out of the bounds of an "accidental bodily injury" since it was not expected that this activity would result in injury. According-

ly, based upon the record of the case that we had before us, we find that it was error for the trial justice to have granted defendant's motion for directed verdict. The unintended and unforeseen back injury that resulted from West's snow-shoveling activities in January 1978 was, under the terms of this policy, an "accidental bodily injury" as a matter of law.

Consequently, the plaintiff's appeal is sustained, the judgment appealed from is reversed, and the case is remanded to the Superior Court for further proceedings.

sults" language, that distinction may never occur to the average policy purchaser reading the language of a policy that uses such technical terminology. Indeed, considerable authority exists for the view that such technical terms should be rendered legally synonymous and the policy then be interpreted based upon what the average policy purchaser would understand as its coverage. *See 10 Couch on Insurance* 2d § 41:31 (Rev. ed. 1982).

The insurance company, as drafter of the policy, has the opportunity to choose the language used therein. Therefore, it should choose language that clearly delineates the policy's coverage to the average policy purchaser without resort to terminology that is understood by the average person as meaning one thing and by the insurance company and insurance industry as meaning yet quite another thing.

The recognition that this opportunity exists in the insurer has given rise to rules of statutory

construction such that " 'when the language employed by an insurer is ambiguous or susceptible to one or more reasonable interpretations, it will be strictly construed against the insurer.' * * * The test to be applied is not what the insurer may have intended, but what the ordinary insured, unskilled in the parlance of the industry, would reasonably have understood." *Gleason v. Merchants Mutual Insurance Co.,* 589 F. Supp. 1474, 1480 (D. R.I. 1984).

As the Supreme Court of Alaska said in discussing the extent of coverage in an "accident" policy case, "we are not convinced that insurers are incapable of writing policy provisions whose limitations are clear to the layman, and then advertising them in a manner which does not mislead the purchaser." *INA Life Insurance Co. v. Brundin,* 533 P.2d 236, 243 (Alaska 1975).