**AMERICAN TITLE INSURANCE COMPANY, Plaintiff, Appellant,**

v.

**EAST WEST FINANCIAL, et al., Defendants, Appellees.**

**AMERICAN TITLE INSURANCE COMPANY, Plaintiff, Appellee,**

v.

**EAST WEST FINANCIAL, et al., Defendants, Appellees,**

**Bay Loan and Investment Bank, Defendant, Appellant.**

**Nos. 93–1464, 93–1506.**

United States Court of Appeals, First Circuit.

Heard Jan. 4, 1994.

Decided Feb. 22, 1994.

876 F.2d 976 (D.C.Cir.1989); *Hahn v. United States,* 757 F.2d 581 (3d Cir.1985).

450

Max Wistow, with whom Stephen P. Sheehan, Providence, RI and Wistow & Barylick Incorporated were on brief for plaintiff.

Howard E. Walker, Providence, RI with whom Hinckley, Allen & Snyder were on brief for defendant, Bay Loan and Investment Bank.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

BOWNES, Senior Circuit Judge.

Plaintiff American Title Insurance Company ("American Title") commenced this action under 28 U.S.C. §§ 2201 and 2202 seeking a declaratory judgment that it was not liable under lender title insurance policies issued to defendants Bay Loan & Investment Bank ("Bay Loan") and East West Financial Corporation ("East West"). Bay Loan and East West counterclaimed for breach of contract and bad faith refusal to pay and sought payment under the policies. After a bench trial the district court (Boyle, C.J.) found that defendants were entitled to coverage under the insurance policies, and granted declaratory judgment in their favor. The court found that defendants' counterclaims for damages were premature and dismissed them without prejudice. Both parties appealed, and in March 1992, we remanded the case for a "total new trial on the merits" because Judge Boyle had improperly allocated the burden of proof on the issue of apparent authority. See American Title Ins. v. East West Financial Corp., 959 F.2d 345, 349 (1st Cir.1992) ("American Title I").

On remand the case was assigned to Judge Torres and retried. It has now worked its way back up to us. American Title and Bay Loan appeal from various aspects of the judgment entered below. See American Title Ins. v. East West Financial Corp., 817 F.Supp. 251 (D.R.I.1993) ("American Title II"). We affirm the district court's ruling on liability and its dismissal with prejudice of Bay Loan's claim under one of the insurance policies, but reverse its dismissal without prejudice of Bay Loan's claims arising under the remaining policies.

## I.

### BACKGROUND

We describe only those facts pertinent to the legal issues presented on these appeals. In the late 1980s, Peter Brandon, one of the principals of Dean Street Development Company ("Dean Street"), offered investors a deal for motel condominium units. "Buyers were promised a deal where no money down was required; guaranteed they could not lose money; and assured that they would receive a five percent return on the initial purchase price in five years." American Title I, 959 F.2d at 346. The deal collapsed and Brandon and his associates were convicted of defrauding Bay Loan out of millions of dollars by fraudulently representing the existence of down payments required by Bay Loan from the investors on whose behalf the loans were made.[1]

Dean Street bought operating motels in Rhode Island and used purchase money mortgages to finance each purchase.[2] It would then "condominiumize" each motel and market titles to the individual units. Dean Street arranged financing for the buyers through East West and Bay Loan. East West originated the loans and then sold them to Bay Loan, which actually advanced the funds.

Closings on the individual units were conducted at the law offices of George Marderosian in Providence, Rhode Island. Although Marderosian's original involvement in these transactions was as Dean Street's lawyer, he eventually came to represent both Dean Street and the buyers in these transactions. All of the buyers consented to this arrangement. Marderosian also served as "settlement agent" or "closing attorney" at the closings and was an authorized agent of American Title.

---

1. The convictions were, in large part, affirmed on appeal. See United States v. Brandon, 17 F.3d 409 (1st Cir.1994).

2. Although Dean Street purchased seven motels, only four are at issue in this proceeding: The Charlestown Motor Inn, The Hillside Motel, The Sand Castle Motel, and The Sandpiper Motel.

Because Dean Street could not obtain partial releases on its purchase money mortgages, it had to sell a number of condominium units before enough funds were raised to discharge the prior mortgages. Once enough units were sold, closings were held on each unit, and East West bundled the loans and sent them as a package to Bay Loan. Among the documents forwarded to Bay Loan were the closing documents along with mortgages and title insurance policies on the individual condominium units.

All of this was done before Bay Loan formally purchased the loans from East West. Although Bay Loan retained the right to reject any loan, it never exercised this right. When a loan was approved, Bay Loan would wire the proceeds to East West, and East West would distribute the funds to Marderosian's trust account. Even though the prior mortgages had not yet been paid off, the title insurance policies issued by Marderosian were ostensibly "clean." That was, they indicated that the units were not subject to any prior defects, liens or encumbrances.

The parties orally agreed that Marderosian would use the loan proceeds to discharge the prior mortgages so that Bay Loan's mortgage would be primary. Bay Loan soon discovered that the prior mortgages were not being discharged. This was because Marderosian had been "diverting" the loan proceeds to Dean Street instead of using them to discharge prior mortgages. *American Title II,* 817 F.Supp. at 255. Dean Street, or more precisely, Peter Brandon converted the funds for personal use. The prior mortgagees foreclosed, thereby extinguishing Bay Loan's mortgages.[3]

Consequently, Bay Loan filed a notice of claim with American Title under the title insurance policies. In response American Title filed an action in the United States District Court for the District of Rhode Island seeking declaratory judgment relieving it from liability under the policies. Bay Loan and East West counterclaimed for breach of contract and bad faith refusal to pay. In an opinion dated April 10, 1991, Judge Boyle held that American Title was liable under the title insurance policies, but dismissed defendants' counterclaims as premature. Both sides appealed.

We remanded the case for a new trial because Judge Boyle had erroneously burdened American Title with disproving Marderosian's apparent authority to issue "clean" title insurance policies on its behalf. We held that the burden was on the defendants to prove the existence of Marderosian's apparent authority. After the second trial, Judge Torres found that Bay Loan's claim with respect to the insurance policy relating to the unit owned by Norma Kirschner in The Charlestown Motor Inn (the "Kirschner unit"), was not premature. The court found that Bay Loan failed to prove its damages on that claim and dismissed the claim with prejudice. It, however, dismissed *without* prejudice Bay Loan's claims under the remaining policies. These appeals ensued.

## II.

### *DISCUSSION*

As a preliminary matter, we disagree with Judge Torres' conclusion that the case was remanded for something short of a "total new trial on the merits." *See American Title II,* 817 F.Supp. at 256–58. Therefore, Judge Torres' "alternative findings," and not Judge Boyle's earlier findings are currently before this court for review.

 We review the district court's factual findings for clear error. Fed.R.Civ.P. 52(a); *Dedham Water Co. v. Cumberland Farms Dairy,* 972 F.2d 453, 457 (1st Cir. 1992). Under this standard, we must affirm the district court unless, after reviewing the entire record, this court "is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948); *see also Boston Beer Co. v. Slesar Bros.*

---

**3.** Bay Loan lost its security interest in all twenty-four units at the Sand Castle Motel, two of the thirty-nine units at the Sandpiper Motel, and seventeen of the thirty-three units at the Charles-town Motor Inn. Bay Loan paid off the prior mortgage at the Hillside Motel in order to preserve its security interest in all thirty-seven units at that motel.

*Brewing Co.*, 9 F.3d 175, 180 (1st Cir.1993) (noting that "the clear error hurdle is ... quite high.") (quoting *Lenn v. Portland Sch. Comm.*, 998 F.2d 1083, 1087 (1st Cir.1993)). The same standard applies to mixed questions of law and fact. Rulings of law, however, are subject to de novo review. *Boston Beer Co.*, 9 F.3d at 180. In diversity cases, questions of local law, in this case Rhode Island law, are given plenary review. *See Salve Regina College v. Russell*, 499 U.S. 225, 230, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991); *Blanchard v. Peerless Ins. Co.*, 958 F.2d 483, 487 (1st Cir.1992).

### A. *Apparent Authority*

■ American Title appeals from the district court's finding that Marderosian had apparent authority to issue the clean title policies to Bay Loan.[4]

"To establish the apparent authority of an agent to do a certain act, facts must be shown that the principal has manifestly consented to the exercise of such authority or has knowingly permitted the agent to assume the exercise of such authority; that a third person knew of the fact and, acting in good faith had reason to believe and did actually believe that the agent possessed such authority; and that the third person, relying on such appearance of authority, has changed his position and will be injured or suffer loss if the act done or transaction executed by the agent does not bind the principal."

*Calenda v. Allstate Ins. Co.*, 518 A.2d 624, 628 (R.I.1986) (quoting *Soar v. National Football League Players Association*, 438 F.Supp. 337, 342 (D.R.I.1975), *aff'd*, 550 F.2d 1287 (1st Cir.1977)); *see also Menard & Co. Masonry v. Marshall Bldg.*, 539 A.2d 523, 526 (R.I.1988) (agent's apparent authority arises from principal's manifestation of such authority to party with whom agent contracts and that person's belief that the agent has authority to bind principal to the contract). Of course, this determination is factual in nature. *Calenda*, 518 A.2d at 618.

■ Bay Loan presented evidence that Marderosian was authorized to write title insurance policies for American Title, that he

possessed all of the necessary forms for doing so, and that he carried a "To whom it may concern" letter from American Title announcing his position as an authorized agent of that company. Moreover, it is undisputed that American Title never informed Bay Loan that Marderosian was not empowered to issue clean title policies in the face of prior undischarged liens unless the funds required to pay them were in the agent's possession and the lender was an institution.

American Title argues that, because there were substantial deviations from accepted business practices in the Dean Street transactions, Bay Loan's reliance on Marderosian's apparent authority was unreasonable and therefore his acts should not be imputed to American Title. *See, e.g., Sheldon v. First Federal Savings & Loan Ass'n*, 566 F.2d 805, 809 (1st Cir.1977) (third party must exercise due care before relying on an agent's apparent authority); Restatement (Second) Agency § 27 comt. a (1957).

American Title illustrates three departures from the "usual methods of conducting business": (1) conducting apparently final closings prior to Bay Loan's actual approval of the borrower, (2) Marderosian's issuance of clean title policies to Bay Loan prior to Bay Loan providing the funding to discharge the prior mortgages, and (3) Bay Loan's receipt of HUD 1's which indicated that the seller would receive all of the loan proceeds without diminution for amounts needed to discharge prior mortgages. The same arguments were presented to the district court which found the following:

Here, there was no reason for East West or Bay Loan to believe that there was anything improper about issuing the policies before prior mortgages were discharged. It was common practice among title attorneys to use the proceeds of purchase money mortgages to discharge prior mortgages after closing. Although it was less common for an attorney to issue a title policy before prior mortgages were discharged, that practice was acceptable when the attorney had adequate assurances that the funds required to pay such mortgage

---

**4.** Hereinafter, references to Bay Loan apply equally to East West.

would be forthcoming and that the mortgagees would, in fact, execute discharges.

In this case, East West and Bay Loan had no cause to be concerned about the availability of funds necessary to pay prior mortgages because Bay Loan itself was the source of those funds. Furthermore, unless the funds were advanced, Bay Loan would not have been at risk because it would have had no mortgages. Finally, East West and Bay Loan had no reason to doubt Marderosian's assurances that the proceeds of their loans would be used to discharge prior mortgages. Indeed, it would be unreasonable to conclude that they would have made such loans if they suspected otherwise.

In short, under the circumstances, it was perfectly reasonable for East West and Bay Loan to believe that Marderosian was authorized to issue "clean" title policies.

*American Title II*, 817 F.Supp. at 259. We have conducted an exhaustive review of the record and can find no compelling evidence to the contrary. Bay Loan plausibly explained why each "departure" was not sufficient to raise any eyebrows at the time it occurred. The district court credited Bay Loan's explanations.

With the benefit of hindsight American Title has strung together distinct aspects of these transactions and argues that Bay Loan's belief in Marderosian's apparent authority was clearly unreasonable. The question we must ask, however, is whether Bay Loan's reliance on Marderosian's apparent authority to issue "clean" title policies was reasonable in light of what Bay Loan knew at the time. The district court found that it was, and we affirm.

### B. *The Policy Exclusion*

■ As its second rationale for relief, American Title argues that Bay Loan is not entitled to recovery because the title policies exclude coverage for encumbrances "created, suffered, assumed or agreed to by the insured claimant." Where an insurance company seeks to deny coverage under a policy exclusion, it carries the burden of proving that the exclusion applies. *Pickering v.*

*American Employers Ins. Co.*, 109 R.I. 143, 282 A.2d 584, 587 (1971).

■ The parties agree that Rhode Island law applies to this defense. Although Rhode Island courts have not interpreted this clause, courts in other jurisdictions have generally held that "the insurer can escape liability only if it is established that the defect, lien or encumbrance resulted from some intentional misconduct or inequitable dealings by the insured or the insured either expressly or impliedly assumed or agreed to the defects or encumbrances." *Brown v. Saint Paul Title Ins. Corp.*, 634 F.2d 1103, 1107–08 n. 8 (8th Cir.1980) (Missouri law); *see also First Nat. Bank of Minneapolis v. Fidelity Nat. Tit. Ins. Co.*, 572 F.2d 155 (8th Cir.1978) (under Nebraska law insurer must establish by a preponderance that the insured agreed that its mortgage would occupy a secondary position to the preexisting mortgage); *accord American Sav. & Loan Ass'n v. Lawyers Title Ins. Corp.*, 793 F.2d 780 (6th Cir.1986) (Tennessee law); *Transamerica Title Ins. Co. v. Alaska Fed. Sav. & Loan Ass'n*, 833 F.2d 775 (9th Cir.1987) (Alaska law). This construction of the exclusionary clause comports with Rhode Island law. *See Bartlett v. Amica Mut. Ins. Co.*, 593 A.2d 45, 48 (R.I. 1991) (exclusionary clauses subject to more than one interpretation are to be construed in the manner most favorable to the insured); *see also Sentry Ins. Co. v. Grenga*, 556 A.2d 998, 999 (R.I.1989) (insurance contract provisions subject to more than one interpretation are construed strictly against the insurer); *West v. Commercial Ins. Co.*, 528 A.2d 339, 341–42 n. 2 (R.I.1987) (same); *Conanicut Marine Serv., Inc. v. Insurance Co. of N. Am.*, 511 A.2d 967, 970 (R.I.1986) (same).

After stating the correct legal standard, the district court found that American Title had not met its burden of proof. The court added that,

Marderosian had apparent authority to issue "clean" title policies on behalf of American Title. In doing so, he acted as American Title's agent, not Bay Loan's agent. Moreover, East West and Bay Loan justifiably relied on Marderosian's representations that he would use the loan proceeds to discharge prior mortgages and were

unaware that he did otherwise. Therefore the defects in title against which the policies insure were neither created, suffered nor assumed by East West or Bay Loan. *American Title II*, 817 F.Supp. at 263. We agree with the district court that Bay Loan did not act in the manner which would bar recovery under the policy exclusion. It is uncontroverted that Bay Loan relied on Marderosian to pay off the prior mortgage and believed that it would be paid off in the normal course. It is also undisputed that Bay Loan intended that the proceeds from its loans be used to pay off the prior mortgages, and that its mortgages be the only encumbrances on the properties. The continued existence of the prior mortgages was unintended by Bay Loan.

■ On appeal American Title maintains that Bay Loan is vicariously liable for the acts of Marderosian as its agent. *See Baker v. ICA Mortgage Corp.*, 588 A.2d 616 (R.I. 1991) (mortgagee's liability for embezzlement by closing attorney rests upon proof of agency). Three requirements are required to establish the existence of an agency relationship under Rhode Island law:

> (1) a manifestation by the principal that the agent will act for him, (2) acceptance by the agent of the undertaking, and (3) an agreement between the parties that the principal will be in control of the undertaking.

*Lawrence v. Anheuser–Busch, Inc.*, 523 A.2d 864, 867 (R.I.1987) (citing Restatement (Second) Agency § 1(1) comt. b (1957)). Further, the principal must have the right to control the work of the agent, and the agent must act primarily for the benefit of the principal. *Id.* (citing cases).

■ American Title offered testimony that, generally speaking, an attorney who serves as the "settlement agent" or "closing agent" at a closing is an agent of the lender and is responsible for disbursing loan proceeds on the lender's behalf. In addition, Marderosian designated himself on the HUD 1 form as the "settlement agent." There was also testimony from representatives of East West and Bay Loan that could have sup-

ported a finding that Marderosian acted as Bay Loan's agent at the closings.

On the other hand, our review of the record reveals that there was no express agreement in this regard between Bay Loan and Marderosian. Furthermore, Bay Loan did not provide any instructions to or exert any control over Marderosian, and Bay Loan did not participate in the payment of Marderosian as closing attorney. In addition, the record is unclear as to how Marderosian became the closing agent in the first place. The district court found that Marderosian was not Bay Loan's agent. "Where there are two permissible views of the evidence, the factfinder's choice between them can not be clearly erroneous." *American Title I*, 959 F.2d at 346 (quoting *Cumpiano v. Banco Santander Puerto Rico*, 902 F.2d 148, 152 (1st Cir.1990) (quotation omitted)) (internal quotation marks omitted). Accordingly, we affirm the district court's finding that the continued existence of the prior mortgages was not "created, suffered, assumed or agreed to" by Bay Loan within the meaning of the policy.

## C. *Damages*

The title policies insure Bay Loan "against loss or damage ... sustained or incurred by the insured by reason of ... [t]he invalidity or unenforceability of the lien of the insured mortgage ... [or t]he priority of any lien or encumbrance over the lien of the insured mortgage." American Title's liability is limited to the lesser of: (1) Bay Loan's actual loss; (2) the amount of insurance; or (3) the indebtedness secured by the insured mortgage at the time of the loss. Only the first of these remained unknown prior to trial. Both parties and the district court acknowledged that, because Bay Loan's mortgages were rendered worthless when the prior mortgagee foreclosed, its actual loss under each policy would be the lesser of (1) the amount uncollectible from the defaulting borrower, or (2) the fair market value of the unit at the time the prior mortgagee foreclosed.[5]

---

**5.** A more detailed explanation of the "actual loss" calculation can be found in the district court's opinion. *See American Title II*, 817 F.Supp. at 260–61.

The district court dismissed, without prejudice, Bay Loan's policy claims in connection with all but the Kirschner unit on the ground that its claims were premature under *Falmouth Nat. Bank v. Ticor Title Ins. Co.*, 920 F.2d 1058 (1st Cir.1990). On appeal, American Title argues that the district court should have reached the merits of Bay Loan's damage claims with respect to all eighty units.

In *Falmouth* we held that a bank's claim for damages under a mortgagee's title insurance policy was premature because the amount of the loss was not "definitely fixed." The relevant provision, which also appears in Bay Loan's title policies, provides: "When liability has been *definitely fixed* in accordance with the conditions of this policy, the loss or damage shall be payable within 30 days thereafter." (emphasis added). In fact, there is no material difference between Bay Loan's policies and the policy construed in *Falmouth*.

In *Falmouth*, the insured brought an action against its title insurer for failure to pay a loss under a mortgagee's title insurance policy after liability had been determined against the insurer by the Massachusetts Supreme Judicial Court (SJC) in a related action. The SJC remanded the case for further proceedings.[6] The insurance company moved to dismiss the action for failure to state a claim arguing that the bank's "actual loss" could not be determined until the state court determined the value of the property on remand. The bank argued that liability was definitely fixed by the SJC's ruling, and that the insurance company was liable for the principal and accrued interest outstanding on the buyer's mortgage note. The district court agreed with the insurance company, and we affirmed.

In affirming the dismissal, we construed the terms of the title insurance policy, focusing on the issue of when a loss is "definitely fixed" and payable to the insured. We distinguished owner's title insurance policies, in which loss is measured by the decrease in market value caused by a title defect, and mortgagee's title policies in which a bank's loss equals the lesser of the decrease in market value of the bank's security caused by the title defect or the amount that is unrecoverable on the borrower's defaulted notes.

With respect to the mortgagee's policies at issue we held that "a mortgagee-insured's loss cannot be determined unless the note is not repaid and the security for the mortgage proves inadequate.... Such is the case because it is only after the insurer or the insured sues on the note and the debtor fails to pay, that the actual loss can be determined." *Falmouth*, 920 F.2d at 1063 (citations omitted). The bank took the position that the insurer should be required to pay the outstanding principal, interest and late payments due on the debt, and subrogate to the bank's rights. We rejected this argument because the insurance policy gave the insurer the option to either pay the bank's actual loss, or purchase the indebtedness and subrogate to the bank's rights against the mortgagors. We held that to require the insurance company to pay the indebtedness before the "actual loss" is ascertained, "would have the effect of amending the policy by making subrogation mandatory rather than optional." *Falmouth*, 920 F.2d at 1063.

We turn our attention to the case at hand. At the commencement of the second trial, Bay Loan took the position that because it had commenced suits against all the defaulting borrowers, it had satisfied the requirements of *Falmouth* at least with respect to some of the units.[7] American Title was of the opinion that Bay Loan would not be able to prove the fair market value of the individual units, but that even if it could, its claims were premature under *Falmouth*.

6. In that action, as a result of the SJC's ruling, the buyer of the mortgaged property was required to reconvey it to the seller. The seller was required to remit the purchase price with appropriate adjustments (*e.g.*, passage of time and improvements on the land). The terms of the reconveyance were the subjects of the remand.

7. The parties did not stake out positions on *Falmouth* prior to the first trial because the decision in *Falmouth* was not handed down until the day before that trial commenced.

When the district court asked Bay Loan what the court should do if some but not all of the claims were premature under *Falmouth*, Bay Loan responded as follows:

I think that the appropriate relief in those circumstances if the Court rules that *Falmouth* does apply in part to this case, would be for the Court to make appropriate findings and conclusions which would be necessary as to those borrowers for whom we have fulfilled the requirements of *Falmouth*. The same findings and conclusions would ultimately apply presumedly to the others.

Bay Loan added:

About the measure of the recovery ... we contend that the measure of recovery is the fair market value of the condominiums at the time they were lost at the foreclosure of senior liens and we are prepared to prove what that value was. If the Court finds that some other measure would be more appropriate or if the Court should disagree with our valuation and decide they were worth some different amount, you know, appropriate findings and conclusions could be made so that as litigation with other borrowers is resolved, either by judgments or by bankruptcies or however they get resolved, both Bay Loan and American Title would know what the other's rights are. And I think that would be easy enough to do.

As the trial progressed, it became clear that Bay Loan would not be able to prove the fair market value of the individual condominium units. Sensing as much, at the close of the evidence Bay Loan admitted that its claims were premature under *Falmouth*. American Title responded that, in order to put an end to this litigation, it would concede that the fair market value of each unit would always be less than the uncollectible debt owed by each defaulting borrower. American Title reiterated this point in its closing argument.

After all was said and done, the district court held that,

the only reasonable reading of *Falmouth* is that a mortgagee must pursue legal action against a defaulting borrower until a reasonable lender would write off the debt as uncollectible or, to put it another way, until the anticipated cost of further proceedings against the borrower would be greater than any amount that is likely to be recovered.

*American Title II*, 817 F.Supp. at 260. It then found that Bay Loan had not reached this point on its claims. *Id.*

American Title makes two principal arguments on appeal. First, it maintains that *Falmouth* did not prevent the district court from reaching the merits of Bay Loan's claims since we have never "held that suit against the borrower is required before a court may conclude that *no* actual loss has been sustained on a title policy, based upon the insured's failure to prove the other elements that are required to make a claim of damages." Plaintiff–Appellant Brief at 42. Alternatively, American Title contends that the district court abused its discretion in dismissing the claims without prejudice because the *Falmouth* issue was "mooted" by its concession that the uncollectible balances due from borrowers would always exceed the value of the collateral. Because American Title is assigning error to the district court's legal conclusion based upon its reading of *Falmouth*, our review is plenary.

We note first that this case proceeded in a manner wholly unlike *Falmouth*. The present case was not decided through a motion to dismiss for failure to state a claim made by the insurer. In contrast, American Title advocated that the district court reach the merits of Bay Loan's claims. Here, the insured's claims went to trial, and the insured was afforded a full and fair opportunity to prove the amounts by which its collateral was impaired by the prior mortgages. In fact, as we noted above, at the commencement of the trial, Bay Loan explicitly stated that it planned to prove the fair market value of all the individual condominium units, even where its claim in connection with that unit was premature under *Falmouth*.

As evidenced by its remarks at the outset of the trial, Bay Loan anticipated that the district court would make factual findings as to the fair market value of each unit, and that those findings would be binding, in the future, on claims that were still premature.

Bay Loan made its position clear, put its best foot forward, and attempted to prove the fair market value of the individual units. Furthermore, it is apparent that, long before American Title made its concession, Bay Loan recognized that the fair market value of each unit would, in all likelihood, be less than the uncollectible debt owed by the defaulting borrowers. This is reflected in Bay Loan's statement that the fair market value of each unit would be "the measure of [its] recovery."

Under these circumstances, we believe that the district court committed reversible error by rigidly applying *Falmouth* to the present case, and failing to reach the merits of Bay Loan's claims. *Falmouth* was not intended to afford an insured-mortgagee second and third opportunities to prove something that it had otherwise been unable to prove. Once Bay Loan made its position clear and proceeded full steam ahead on all of its claims, it was incumbent upon the district court to adjudicate each claim on the merits.[8]

Only with respect to the claim under the Kirschner policy did the district court reach the merits of Bay Loan's damages claim. The court found that,

> Bay Loan has been afforded every opportunity to prove the amount by which the value of its security in the Kirschner unit was diminished by the title defects. Since it has failed to do so, its counterclaim for damages under the Kirschner policy is dismissed with prejudice.

*American Title II*, 817 F.Supp. at 261. There is no indication in the record that Bay Loan's proof on the other units was, or would have been, different in any material respect from its proof on the Kirschner unit. Bay Loan anticipated that the district court would find that it had proven the fair market value for each of the units, and that upon maturity

of its claims, that value would be the measure of its recovery under the title policies. Since Bay Loan has tried but did not prove this value for any of the units, it should have to bear the consequences of its failure.

In short we rule that the district court misconstrued the scope of *Falmouth* and that Bay Loan was given every opportunity to prove damages but was unable to do so. This is not a case where the district court foreclosed any avenues of proof. There is no reason why Bay Loan should be granted a third opportunity to prove damages.

 There was another reason that compelled a dismissal with prejudice. American Title maintains that it "mooted" the *Falmouth* issue, and that Bay Loan's claims were therefore ripe for adjudication on the merits. This argument has merit. Under the policies, the *Falmouth* requirements are conditions precedent to the insurance company's obligation to pay under the policies. Where, as is the case here, the insurer agrees to waive one of the conditions, this waiver is effective, and the insurer becomes obligated to pay under the policy. *See generally* Arthur L. Corbin, 3A Corbin on Contracts § 753 (1972) (condition to party's duty to perform can be eliminated by a mere voluntary expression of party's willingness to waive it).

Moreover, as a practical matter, once American Title made its concession, Bay Loan's pending actions against the debtors became irrelevant to the damages calculation. In other words, the resolution of those claims would not affect the amount of Bay Loan's recovery from American Title.[9] *Falmouth* does not require an insured to expend time, effort and money in actions to collect against defaulting borrowers as a prerequisite to establishing damages against the insurer,

---

8. Moreover, we note that one of our principal concerns in *Falmouth* was the bank's attempt to make subrogation mandatory by requiring the insurance company to purchase the outstanding indebtedness prior to a determination of the actual loss. Here, Bay Loan has not advanced this argument, but has acknowledged that its measure of recovery is the fair market value of the individual units at the time the prior mortgagee foreclosed.

9. In fact, Bay Loan could have realized a windfall as a result of this concession. If Bay Loan had succeeded in proving the fair market value of a given unit, and subsequently recovered substantial sums from the corresponding debtor such that the fair market value of the unit exceeded the amount still owed by the debtor, then Bay Loan would have recovered more than it was entitled to recover under its title insurance.

where those actions are wholly irrelevant to the measure of the insured's recovery.

Thus, the district court should have reached the merits of Bay Loan's claims, and dismissed them with prejudice. We reverse the district court's without prejudice dismissal of these claims. Our disposition of the evidentiary issue raised on Bay Loan's appeal of the dismissal of the Kirschner claim would not alter this conclusion. Because Bay Loan did not appeal from the district court's dismissal without prejudice of its claims, even if we were to reverse the challenged evidentiary ruling, only the Kirschner unit would enjoy the benefit of that ruling.

### D. *The Kirschner Unit*

As previously indicated, the district court found that Bay Loan's claim under the title policy covering the Kirschner unit was not premature.[10] But, the court found that Bay Loan was unable to prove its damages on this claim, and therefore dismissed it with prejudice. Bay Loan appeals this ruling primarily on the ground that the district court improperly excluded the testimony of its expert appraiser.

Bay Loan's title policy provides coverage for losses arising out of "the priority of any lien or encumbrance over the lien of *the insured mortgage*." (emphasis added). Each insured mortgage at issue here corresponds to an individual condominium unit. Accordingly, Bay Loan was required to prove its actual loss with respect to each individual condominium unit—in this case the Kirschner unit. Bay Loan planned to do this by having an expert appraiser testify as to the fair market value of The Charlestown Motor Inn as an operating business. *See American Title II*, 817 F.Supp. at 261. American Title objected to the admission of this testimony on the ground that, without more, the value of the motel was not probative of the value of each individual condominium unit. After allowing Bay Loan to make an offer of proof, the court sustained the objection. The court later explained:

Bay Loan did proffer evidence regarding the value of The Charlestown Motor Inn as an operating motel on the theory that the value of each individual unit is a proportionate share of that amount. However, that approach ignores the fact that what American Title insured was title to and the validity of Bay Loan's mortgage liens on individual condominium units. It did not insure the motels as going businesses or the value of individual units calculated as a percentage of the motel's value. Those two values may differ just as the total value of ten residential lots comprising a city block may be considerably different from the value of those lots when combined to form one parcel of commercial real estate.

*Id.* at 261.

Bay Loan argues that the district court abused its discretion in excluding the proposed testimony because it should be allowed to value the individual units by looking at the motel *qua* motel, since that represented the highest and best use for the units. Bay Loan also argues that the value of the motel represented the best available evidence of the value of the individual units since the units could not be independently appraised. We address these contentions *seriatim* keeping in mind that a district court's decision to exclude evidence is reviewed under an abuse of discretion standard. *Losacco v. F.D. Rich Constr. Co.*, 992 F.2d 382, 385 (1st Cir.), *cert. denied,* ── U.S. ──, 114 S.Ct. 324, 126 L.Ed.2d 270 (1993); *Harrison v. Sears, Roebuck & Co.*, 981 F.2d 25, 32 (1st Cir.1992).

Bay Loan's first contention is wide of the mark. Although it might be that the "highest and best" use for the individual condominium units would be as rooms in an operating motel, this is not what was insured. As the district court pointed out, what was insured was "title to and the validity of ... mortgage liens on *individual condominium units.*" *Id.* While it is true that a number of these units were located in the same motel, the insurance was not issued on this basis and did not insure the condominium units as

---

**10.** With the consent of American Title, Bay Loan settled its claim against Kirschner for $15,000.

*American Title II,* 817 F.Supp. at 260.

potential rooms in a motel. We think the district court's "city block" analogy clearly illustrates the basic flaw in Bay Loan's approach.

 Next, Bay Loan maintains that the value of the motel is admissible as the "best available evidence" of the value of the individual condominium units. Even though the "proportionate share" motel's value (*i.e.*, the value of the motel divided by the number of individual condominium units), *might* be the best evidence of the value of each unit, it is not necessarily so. *See Allison v. Ticor Title Ins. Co.*, 907 F.2d 645 (7th Cir.1990). A given unit might be worth more or less than the value of the motel divided by the number of units. It was Bay Loan's responsibility to introduce evidence as to the value of each unit so that the district court could make a determination of damages. As the record plainly indicates, Bay Loan did not intend to offer any evidence which would connect its expert's opinion on the value of the entire motel, to the value of individual condominium units.[11]

Had Bay Loan's expert witness been prepared to testify that, although he could not directly appraise individual units, the proportionate value of the motel was relevant in determining the value of the units, we might be inclined to side with Bay Loan. *See Allison v. Ticor Title Ins. Co.*, 979 F.2d 1187 (7th Cir.1992) (holding that district court did not abuse its discretion by admitting evidence of lodge's value where value of individual units in the lodge was at issue, particularly where expert witness testified that he looked at the proportionate value of lodge in valuing the individual units). Because this was not the case, we cannot see how the court's ruling amounted to an abuse of discretion.

 Finally, Bay Loan contends that notwithstanding the exclusion of this evidence, it still proved its damages with respect to the Kirschner unit. We review the

district court's determination of damages for clear error. *Soto v. United States*, 11 F.3d 15, 18 (1st Cir.1993) ("[D]etermining damages ... falls within the sound judgment and discretion of the factfinder and will not be overridden without substantial cause.").

The only evidence offered by Bay Loan with respect to its damages on its claim under the Kirschner policy was the sale price received by the prior mortgagee when he foreclosed on seventeen of the thirty-three units in The Charlestown Motor Inn, one of which was the Kirschner unit.[12] What Bay Loan fails to realize is that the sale price obtained by the prior mortgagee at foreclosure represents the value of approximately one-half of the entire motel, not the value of seventeen individual condominium units. In fact, the parties stipulated that the prior mortgage covering these seventeen units was not subject to the condominium declaration. Because Bay Loan did not introduce any evidence of a correlation between the value of one-half the motel and the value of the Kirschner unit, we can find no error, clear or otherwise, in the district court's findings and ruling.

### III.

### *CONCLUSION*

We affirm the judgment of the district court as to American Title's liability under the title insurance policies at issue here. We also affirm the district court's dismissal with prejudice of Bay Loan's claim under the Kirschner policy. We reverse the district court's dismissal *without* prejudice of Bay Loan's claims under the remaining policies. Those claims are ordered dismissed *with* prejudice.

No costs to either party.

---

11. After Bay Loan made its offer of proof, the following dialogue took place:

> THE COURT: And who is going to make that link, me, the Court?
> BAY LOAN: Well, the Court is the trier of fact in this case, that's true.
> THE COURT: Well, it has to have facts to try, doesn't it?

12. The prior mortgage on The Charlestown Motor Inn originally covered the entire motel. After the condominium declaration was recorded, however, the prior mortgagee released sixteen of the units from his prior mortgage. These units are currently the subject of a quiet title action by Bay Loan.